John Doe, Appellant, v Peter Poe et al., Respondents.

Second Department, March 22, 1993

APPEARANCES OF COUNSEL

*Bracken & Margolin,* Islandia *(Linda U. Margolin* of counsel), and *Williams & Connolly,* Washington, D.C. *(Barry S. Simon* and *John D. Cline* of counsel), for appellant. (One brief filed.)

*Simpson Thatcher & Bartlett,* New York *(James J. Hagan* and *Michael J. Chepiga* of counsel), and *Cravath, Swaine & Moore,* New York *(John R. Hupper* of counsel), for respondents. (One brief filed.)

## OPINION OF THE COURT

MANGANO, P. J.

The question to be resolved on this appeal is whether the plaintiff met his burden of demonstrating that certain communications are covered by the attorney-client privilege. In our view, the question must be answered in the negative.

The plaintiff (hereinafter the CEO), is a former Chairman of the Board, Chief Executive Officer, and trustee of a Federally chartered savings bank. In 1985, he hired the defendant Peter Poe, a New York law firm, in connection with the bank's acquisition of a "troubled" savings and loan association from the Federal Government. In 1989, the CEO also hired the defendant Ron Roe, a Washington, D.C. law firm, to advise the bank with regard to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (hereinafter FIRREA). Shortly after the enactment of FIRREA, the defendants filed a lawsuit in Federal District Court on behalf of the bank.

In February 1990 representatives of the defendant law firms met with the CEO and the President of the bank. The defendants suggested that, in preparation for the pending Federal litigation and upcoming regulatory inspections, they conduct a "due diligence" inquiry to determine whether the bank was in compliance with all regulatory requirements. The CEO and the President agreed. The inquiry was to focus on executive compensation, nepotism, perquisites, and kickbacks, as well as the CEO's relationship with his former law firm, which represented the bank in connection with the closing of first mortgage loans.

On March 30, 1990, Mr. C. and Mr. M., members of the

defendant law firms, met with the CEO and a member of the CEO's former law firm, Mr. P. At that meeting, the CEO revealed that, between 1980 and 1989, he, his daughter, and his daughter-in-law, had received substantial amounts of money from his former law firm. The CEO told Mr. C. and Mr. M. that the payments to him represented a 10-year payout of his interest in the firm and that the payments to his daughter and daughter-in-law represented their ownership interests in the firm.

On July 6, 1990, at the CEO's suggestion, Mr. B., a member of the defendant law firm of Peter Poe, met with Mr. P. Mr. P. told Mr. B. that the alleged 10-year payout agreement that the CEO had with his former firm was "a fiction", and that no such agreement had ever existed either orally or in writing. Mr. P. explained that, after leaving the firm to work for the bank, the CEO had continued to receive payments consistent with his interest in the firm. Mr. P. also explained that the CEO's daughter and daughter-in-law were conduits through which payments continued to be made to the CEO, even after he had reduced his interest in the firm in compliance with Federal law.

On August 6, 1990, the defendants advised the CEO to retain his own counsel. Sometime thereafter, a special committee of the bank's board of trustees was formed to investigate the relationship between the CEO, his family, and his former law firm.

The CEO commenced the instant action to enjoin the defendants from disclosing to that committee the information they had obtained from him and Mr. P. at the March 30, 1990 and July 6, 1990 meetings. The CEO argued that those communications were protected by the attorney-client privilege and could not be disclosed without his consent.

The Supreme Court denied the CEO's motion for a preliminary injunction.

In defining the limits of the attorney-client privilege, the Court of Appeals has set down the following general principles *(Matter of Priest v Hennessy,* 51 NY2d 62, 68-69): "First, it is beyond dispute that no attorney-client privilege arises unless an attorney-client relationship has been established. [The attorney-client] relationship arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services * * * Second, not all communications to an attorney are privileged. In order to make a valid claim

of privilege, it must be shown that the information sought to be protected from disclosure was a 'confidential communication' made to the attorney for the purpose of obtaining legal advice or services * * * Third, the burden of proving each element of the privilege rests upon the party asserting it * * * Finally, even where the technical requirements of the privilege are satisfied, it may, nonetheless, yield in a proper case, where strong public policy requires disclosure".

The CEO hired the defendant law firms in 1985 and 1989, respectively, to represent the bank and the defendant law firms eventually filed a lawsuit in Federal District Court on behalf of the bank. The defendants subsequently recommended to the CEO and President of the bank that a "due diligence" inquiry be conducted in preparation for the pending litigation and upcoming regulatory inspections. When the CEO met with Mr. C. and Mr. M. on March 30, 1990, it was at their request to provide them with information with regard to executive compensation and perquisites, among other things, in connection with the "due diligence" inquiry. There is simply no evidence in the record that the purpose of the meeting was an attempt by the CEO to seek or obtain legal advice. Moreover, the CEO admitted at the hearing that most of the information he provided to the defendants could have been obtained from others at the bank. Under these circumstances, the CEO, an attorney himself, could not have reasonably believed that he was attending the March 30, 1990 meeting in his personal capacity with a " 'manifested intention to seek professional legal advice' " (Westinghouse Elec. Corp. v Kerr-McGee Corp., 580 F2d 1311, 1319, cert denied 439 US 955; Premium Prods. Sales Corp. v Chipwich, Inc., 539 F Supp 427, 433).

The hearing court credited the testimony of Mr. C. and Mr. M. that they told the CEO, in response to his questions at the March 30, 1990 meeting, that they represented the bank, and rejected the testimony of the CEO and Mr. P., that Mr. C. told them that he and Mr. M. represented the bank and its trustees. The hearing court also credited the testimony of Mr. C. and Mr. M., that Mr. P. attended the March 30, 1990 meeting as a member of the CEO's former law firm, and rejected the testimony of the CEO and Mr. P. that Mr. P attended the meeting as the CEO's attorney. A hearing court's resolution of questions of credibility will not be disturbed on appeal when, as here, it is supported by the record (see,

*Vizzari v State of New York,* 184 AD2d 564; *Smith v Comas,* 173 AD2d 535).

Since Mr. P. did not attend the March 30, 1990 meeting as the CEO's attorney, his presence at that meeting also compels the conclusion that the communications made thereat are not privileged *(see,* Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C4503:3, at 574 [communications between lawyer and client made in the known presence of third parties are not privileged]). Moreover, there is no reason why Mr. P.'s communications to the defendants on July 6, 1990 should be privileged *(see,* Richardson, Evidence § 414 [Prince 10th ed] [information obtained by an attorney from other persons or from other sources is not privileged]). The CEO's argument that Mr. P. was acting as his agent is raised for the first time on appeal, and is therefore unpreserved for appellate review *(see,* CPLR 5501). In any event, there is no evidence in the record that Mr. P. attended the March 30, 1990 and July 6, 1990 meetings as the CEO's agent.

The law is well settled that in order to prevail on a motion for a preliminary injunction, the movant must clearly demonstrate (1) a likelihood of ultimate success on the merits, (2) irreparable injury absent granting of the preliminary injunction, and (3) a balancing of the equities in his favor *(see, Grant Co. v Srogi,* 52 NY2d 496; *Halpin v Suffolk County Legislature,* 169 AD2d 749; *Schrabal v Holiday Beach Prop. Owners Assn.,* 150 AD2d 670). Preliminary injunctive relief is a drastic remedy which will not be granted "unless a clear right thereto is established * * * and the burden of showing an undisputed right rests upon the movant" *(First Natl. Bank v Highland Hardwoods,* 98 AD2d 924, 926). Applying these principles to the case at bar, the denial of the plaintiff's motion for a preliminary injunction was a proper exercise of discretion.

We have considered the plaintiff's remaining contentions and find that they do not warrant a contrary result.

THOMPSON, SULLIVAN and BALLETTA, JJ., concur.

Ordered that the order is affirmed, with costs.