[618 NYS2d 25]

EDWARD TALVY, Respondent, v AMERICAN RED CROSS IN GREATER NEW YORK et al., Appellants.

First Department, November 1, 1994

144

## APPEARANCES OF COUNSEL

*Mark A. Jacoby* and *Lawrence J. Baer* of counsel, New York City *(Weil, Gotshal & Manges,* attorneys), for appellants.

*Arthur M. Wisehart* of counsel, New York City *(Wisehart & Koch,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

Defendants appeal from the disqualification of their attorneys, Weil, Gotshal & Manges (WG&M), from the defense of this discrimination action in which plaintiff, the former Personnel Director of defendant American Red Cross in Greater New York (New York Red Cross), alleges that he was harassed and mistreated because of his age, race and national origin. Robert M. Bender, Jr., and Mary Stanton, the individual defendants, are New York Red Cross's Chief Executive Officer and Manager of Human Resources, respectively.

The facts relevant to the disqualification motion may be briefly summarized. In the course of his duties as Personnel Director, plaintiff, from time to time, consulted with WG&M in regard to legal matters involving employment in which WG&M was representing New York Red Cross. In one particular instance, plaintiff spoke with a WG&M attorney after a former New York Red Cross employee, Henrietta Cooper, filed an administrative complaint in May 1988 with the New York State Division of Human Rights (NYSDHR), alleging employer discrimination based on race and color resulting in the termination of her employment. In her administrative complaint, Ms. Cooper alleged, *inter alia,* that plaintiff, although not named as a respondent therein, was, as New York Red Cross Personnel Director, unresponsive to her charge of harassment by one of her fellow employees, who had allegedly directed racial insults towards her.

Plaintiff forwarded the administrative complaint to WG&M, which undertook New York Red Cross's defense in that matter. At the time, plaintiff had a telephone conversation with a

Ms. Jagoda, an attorney with WG&M but no longer in its employ, concerning the allegations of the complaint. According to Ms. Jagoda, plaintiff denied being unresponsive to Ms. Cooper's complaint and insisted that he advised Ms. Cooper to follow New York Red Cross's grievance procedure. According to Ms. Cooper's account, plaintiff told her that "nothing could be done about the situation because [the fellow employee] has been employed with the organization for a longer time and she is [w]hite." When Ms. Jagoda, in August 1991, sent plaintiff a proposed affidavit setting forth the substance of his assertions and disclaimers, as stated to her during the May 1988 telephone conversation, he refused to execute it.

Thereafter, in July 1992, Ms. Cooper commenced an action in the Federal court pursuant to title VII of the Civil Rights Act of 1964 against New York Red Cross, alleging the same acts of discrimination as claimed in the complaint before NYSDHR. WG&M represents New York Red Cross in that action. New York Red Cross considers plaintiff's account of his conversation with Ms. Cooper, as recounted to Ms. Jagoda, to be of critical importance to Cooper's case against it. If Cooper's version, as alleged in her NYSDHR complaint, is accurate, plaintiff's advice only compounded the alleged discrimination and made the defense of New York Red Cross more difficult. If, on the other hand, the conversation with Cooper took place as Jagoda described it, plaintiff's response was entirely appropriate and Cooper emerges as a disgruntled employee who refused to follow the company's grievance policy. The matter is complicated by Cooper's more recent statement, under oath, that she believes that the statement attributed to plaintiff was "my own conclusion rather than anything that [plaintiff] said." This statement appears in an affidavit prepared by Wisehart & Koch, Cooper's former attorneys in the Federal action, who were disqualified on New York Red Cross's application. Wisehart & Koch also represent plaintiff in this action.

Wisehart & Koch also represent Joan Lipin, a former employee of New York Red Cross, in two actions in the Federal court against it and various individual defendants, including several attorneys with WG&M, as well as in a matter alleging sexual harassment and discrimination in the Supreme Court, New York County, *Lipin v Bender,* which has been dismissed as a sanction for plaintiff's improper taking and use of confidential documents. This Court affirmed that dismissal (193 AD2d 424, *lv granted* 197 AD2d 942).

The *Lipin* actions are relevant because plaintiff now alleges that defendants Stanton, his former supervisor, and Bender, the Chief Executive Officer, "harassed" him for, *inter alia,* refusing to sign a "false and defamatory" statement, dated July 13, 1989, ostensibly prepared by WG&M, which purports to recount plaintiff's recollections of criticisms he had heard of Ms. Lipin from her fellow employees. According to plaintiff, when Stanton presented this statement to him to sign he refused. It should be noted, however, that at an earlier deposition, before Mr. Wisehart began to represent him, plaintiff testified that Ms. Stanton asked him to write something "negative" about Ms. Lipin. He did not at that time claim that Ms. Stanton had given him a prepared written statement.

In her deposition, Ms. Stanton testified that she had neither prepared nor given the statement in question, which bears the legend "Prepared at the Request of [WG&M]," to plaintiff and first became aware of its existence when Mr. Wisehart produced it in October 1991—two years after the date appearing on the document—in the *Lipin* lawsuit. According to Ms. Stanton, she merely informed plaintiff that Ms. Lipin had commenced a lawsuit against New York Red Cross and asked if he could recall if there were any complaints about her and, if so, to document those complaints in writing. In response to disqualification motions filed in both the *Lipin* litigation and the instant matter, defendants have submitted affidavits by the WG&M partner handling both cases expressly denying any participation in or knowledge of the preparation of the written statement.

Over three years after the commencement of this action, plaintiff filed a note of issue and statement of readiness. When defendants moved to strike the note of issue for an alleged refusal to comply with previously requested discovery, plaintiff cross-moved to disqualify WG&M, asserting as grounds therefor a conflict of interest in that WG&M formerly represented plaintiff in both the *Cooper* and *Lipin* matters, its joint representation of New York Red Cross and its employees, Bender and Stanton, parties with adverse interests, and the prohibition against being an advocate witness *(see,* Code of Professional Responsibility DR 5-102 [A] [22 NYCRR 1200.21 (a)]). The IAS Court ruled that WG&M should be disqualified, finding, *inter alia,* that although no attorney-client relationship existed between plaintiff and WG&M, his communications with WG&M, as New York Red Cross counsel, in the performance of his duties as Personnel Director of New York

Red Cross with respect to ongoing legal concerns affecting employment matters and specifically in the *Cooper* matter, constituted confidences which WG&M was forbidden to disclose to New York Red Cross. The court also found that WG&M could not represent New York Red Cross in both the instant matter and *Cooper* action, given the divergent accounts as to plaintiff's handling of Cooper's discrimination complaint. Finally, the court found that "some" attorneys from WG&M "ought" to be called as witnesses to refute plaintiff's claim that New York Red Cross retaliated against him for refusing to sign the written statement concerning Ms. Lipin, alleged to have been presented to him for signature by his superior, defendant Stanton. None of the grounds asserted warrants disqualification. Accordingly, we reverse and deny the cross motion.

■ The rule is well established that a party seeking to disqualify an attorney or a law firm on the ground of prior representation must establish "(1) the existence of a prior attorney-client relationship and (2) that the former and current representations are both adverse and substantially related [citations omitted]." *(Solow v Grace & Co.,* 83 NY2d 303, 308.) The rule is intended to serve two purposes, namely, the protection of client confidences and the avoidance of the appearance of impropriety. *(Supra,* at 308.)

With respect to confidentiality, a lawyer may not disclose or adversely use confidential information obtained from a former or current client. (Code of Professional Responsibility DR 4-101 [B] [22 NYCRR 1200.19 (b)]; *see,* DR 5-108 [A] [2] [22 NYCRR 1200.27 (a) (2)].) The lawyer's obligation to respect those confidences is a continuing one. *(Solow v Grace & Co., supra,* at 309.) When a lawyer represents a party against a former client, the former client's expectation of confidentiality is placed in direct conflict with the current client's interest in the lawyer's vigorous representation of him. *(Supra,* at 309.) Thus, the rule with respect to prior representation is intended to assure that the former client is not burdened with the fear that matters spoken in confidence will subsequently be used against him in related litigation. *(Supra,* at 309; *see, Cardinale v Golinello,* 43 NY2d 288, 295-296; Code of Professional Responsibility DR 4-101 [22 NYCRR 1200.19].) "If an attorney has represented a client in an earlier matter and then attempts to represent another in a substantially related matter which is adverse to the interests of the former client, the

presumption of disqualification is irrebuttable." *(Solow v Grace & Co., supra,* at 313.)

Not to be lost sight of in any assessment of a disqualification motion is that such motions are often used as a litigation tactic, "inflicting hardship on the current client and delay upon the courts by forcing disqualification even though the client's attorney is ignorant of any confidences of the prior client." *(Supra,* at 310.) As the Court of Appeals has noted, "[d]isqualification of a law firm during litigation implicates not only the ethics of the profession but also the substantive rights of the litigants. Disqualification denies a party's right to representation by the attorney of its choice." *(S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.,* 69 NY2d 437, 443.) In the instant matter, it should be noted, the disqualification motion was made nearly four years after the facts giving rise to the motion were known to plaintiff.

While plaintiff, in his disqualification motion, made the conclusory claim that he was a client of WG&M merely by virtue of his communications, as New York Red Cross's employee, with WG&M, the IAS Court recognized that an attorney-client relationship, in fact, never existed. Nevertheless, relying on dicta from *Nichols v Village Voice* (99 Misc 2d 822, 824 [Sup Ct, NY County 1979]), which, quoting *Westinghouse Elec. Corp. v Kerr-McGee Corp.* (580 F2d 1311, 1319), held that a " 'fiduciary obligation or an implied professional relation' may exist in the absence of a formal attorney-client relationship", the IAS Court concluded that WG&M must be disqualified because it was privy to plaintiff's confidences as a result of communications it had with him during the course of its representation of New York Red Cross. This was error.

Unless the parties have expressly agreed otherwise in the circumstances of a particular matter, a lawyer for a corporation represents the corporation, not its employees. *(See, e.g., Evans v Artek Sys. Corp.,* 715 F2d 788, 792 [2d Cir 1983]; *see also,* Code of Professional Responsibility DR 5-109 [22 NYCRR 1200.28].) None of plaintiff's conversations with WG&M involved a client confidence since plaintiff at all times knew that WG&M represented his employer, New York Red Cross, and all his communications with WG&M took place in the context of that representation. Plaintiff had no reason to believe that his communications with WG&M, in the course of his employment with New York Red Cross, would not be shared with his employer. Indeed, plaintiff, as its employee, was obligated to disclose to New York Red Cross any information that became

known to him in carrying out his duties. *(See, e.g., Bruno Co. v Friedberg,* 21 AD2d 336, 340; *see also, Cristallina v Christie, Manson & Woods Intl.,* 117 AD2d 284, 293.) Similarly, WG&M had an obligation to disclose to its client, New York Red Cross, whatever it learned from its client's employees in carrying out its duties as counsel. Absent such obligation, the ability of a lawyer to represent a corporate client would be imperiled.

Other courts, faced with similar disqualification motions, based on a former employee's claim that his communications with the employer's counsel, while he was employed, were confidential, thus preventing the employer's counsel from representing it in a matter adverse to the former employee, have routinely rejected such claims. In each case, the court held that the former employee could not reasonably believe that his communications with the employer's attorney would be kept from the employer. *(See, e.g., Doe v Poe,* 189 AD2d 132, *lv denied* 81 NY2d 711; *Kubin v Miller,* 801 F Supp 1101, 1116 [SD NY 1992]; *Ferranti Intl. v Clark,* 767 F Supp 670 [ED Pa 1991]; *Professional Serv. Indus. v Kimbrell,* 758 F Supp 676 [D Kan 1991]; *Wayland v Shore Lobster & Shrimp Corp.,* 537 F Supp 1220, 1223 [SD NY 1982].) Indeed, even in circumstances where the employer's attorney represented the employee individually, albeit jointly with his former employer, in prior litigation, the court rejected the former employee's attempt to disqualify the employer's attorneys because of shared confidences or conflict of interest grounds, holding that the former client could not have reasonably assumed that the attorneys would withhold from the present client the information received. *(Allegaert v Perot,* 565 F2d 246, 250-251 [2d Cir 1977]; *see also, Kempner v Oppenheimer & Co.,* 662 F Supp 1271, 1277-1278 [SD NY 1987].)

Thus, the conversation between plaintiff and WG&M's Jagoda about Ms. Cooper's administrative complaint constituted a communication between the client, New York Red Cross, and its attorneys. Plaintiff could not reasonably have expected that the information he provided would be kept confidential from New York Red Cross because, as an employee, he was obligated to provide that information to New York Red Cross, and he had to know that WG&M would use such information to prepare a defense for its client. As to those conversations, plaintiff could have no reasonable expectation of attorney-client confidentiality. It should be emphasized on this point that in all of these proceedings WG&M has always repre-

sented New York Red Cross; we are not here dealing with a law firm which changed sides from a former client to a current client, whose interests are adverse *(see, e.g., Emle Indus. v Patentex, Inc.,* 478 F2d 562 [2d Cir 1973]).

In disqualifying WG&M on the further ground that the firm could "not adequately represent" New York Red Cross in both this action and the *Cooper* matter pending in the Federal court, the IAS Court cited Ms. Cooper's allegation that plaintiff failed to respond appropriately to her complaint of harassment by a coemployee. According to the court, WG&M was "in the unenviable position of deciding either to subpoena plaintiff as a witness in the Cooper action to refute her claim or to concede plaintiff's failure to properly act upon her claim of discrimination in an attempt to prevail in this action."

█ This so-called adequacy of representation problem does not present an ethical issue at all. The dilemma, if indeed it be one, is a matter of trial strategy for New York Red Cross itself and would be present no matter who represents it and whether it has the same or different counsel in the two cases. In point of fact, New York Red Cross will not be making a choice between subpoenaing plaintiff to testify in the *Cooper* case to rebut Ms. Cooper's testimony or conceding his failure to act properly on Cooper's discrimination claim in an attempt to prevail in this action. Rather, it will have to deal with plaintiff's testimony on this subject, whatever it may be. If he supports Ms. Cooper's claim and gives an account different from what he reportedly told WG&M's Jagoda, he will likely prejudice his own case by an admission of dereliction as Personnel Director. If his testimony is consistent with his original version, as reported to Ms. Jagoda, his testimony will not be relevant in his own case since he has never claimed that he was criticized by New York Red Cross for mishandling Ms. Cooper's complaint.

On this issue, the IAS Court could draw no comfort, as seemingly it did, from the Federal court's disqualification of Mr. Wisehart's law firm because of its simultaneous representation of plaintiff and Ms. Cooper. That decision was based on the Wisehart firm's inability to fulfill its ethical obligation to provide undivided loyalty to its two separate clients, who were likely to make conflicting statements adverse to one another's interests. There is no analogy between the Wisehart firm's representation of two separate clients with potentially conflicting positions and WG&M's representation of the same client, New York Red Cross, in both the *Cooper* and instant case.

■ With respect to WG&M's disqualification on the basis of the "advocate/witness" rule, even assuming, arguendo, that a current WG&M attorney "ought" to be called as a witness at trial, the disqualification of the entire firm would still not be warranted. Pursuant to Code of Professional Responsibility DR 5-102 (A) (22 NYCRR 1200.21 [a]), only the attorney-witness who will testify on behalf of the client is disqualified. *(See, e.g., Kaplan v Maytex Mills,* 187 AD2d 565; *Kubin v Miller,* 801 F Supp, *supra,* at 1113-1114; *Paretti v Cavalier Label Co.,* 722 F Supp 985, 989 [SD NY 1989]; *see also, U. S. Risk Mgrs. v Gershuny,* 141 AD2d 389, 390.)

The IAS Court recognized that a law firm is permitted to continue representing a client even if one of its attorneys ought to be called as a witness but refused to apply the rule because the required testimony "may not be limited to only one attorney and with all the other problems and conflicts present herein, this additional straw must break the camel's back." Aside from the fact that the court was engaging in pure speculation in its surmise that some WG&M attorneys would have to testify, there is no rule or authority mandating vicarious disqualification if more than one attorney from a law firm is required to testify. And, as already indicated, plaintiff's other asserted grounds in support of disqualification are meritless.

More importantly though, nothing in this record supports the conclusion that any WG&M attorney ought to be called as a witness. An attorney witness "ought" to be called "only when it is likely that the testimony to be given by the witness is necessary." *(S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.,* 69 NY2d, *supra,* at 445-446.) Merely because an attorney "has relevant knowledge or was involved in the transaction at issue" does not make that attorney's testimony necessary. *(Supra,* at 445.) Such a determination must take into account "such factors as the significance of the matters, weight of the testimony, and availability of other evidence." *(Supra,* at 446.) The IAS Court failed to make the appropriate assessment.

In fact, any testimony by a WG&M attorney would have been received for the limited purpose of discrediting plaintiff's testimony concerning the written statement produced in the *Lipin* litigation in October 1991, more that two years after Ms. Stanton allegedly gave it to plaintiff, demanding that he sign it. As the record discloses, plaintiff's own testimony is contradictory on this issue. Before being represented by Mr.

Wisehart, plaintiff, at his deposition on May 15, 1991, testified that Ms. Stanton asked him to write something negative about Ms. Lipin, that he told her he would but did not and that there were no other conversations on the matter. He did not then claim that Ms. Stanton had given him a prepared written statement and demand that he sign it. On March 17, 1992, after Mr. Wisehart had been substituted as his attorney, plaintiff testified that Ms. Stanton gave him a prepared statement to sign and that, after telling her he would sign it, he changed his mind and so advised Ms. Stanton in a subsequent telephone conversation. This unexplained change of testimony on a material matter is, of course, plainly damaging to plaintiff's credibility.

Moreover, defendants Stanton and Bender are available to testify in contradiction to plaintiff on his point. In her deposition, Ms. Stanton testified that she had never seen or heard of this written statement before it was produced by Mr. Wisehart in the *Lipin* litigation. Her testimony thus coincides with plaintiff's original deposition testimony that she asked him to reduce to writing any comments he had heard about Ms. Lipin, that he never got back to Ms. Stanton on the subject and that she had never given him anything to sign. Mr. Bender's testimony will corroborate Ms. Stanton's testimony. New York Red Cross can also call additional witnesses to contradict plaintiff's testimony that the disputed document does not accurately reflect the substance of what other employees said about Ms. Lipin. Thus, the testimony of any present WG&M attorney would be, at best, cumulative in refuting plaintiff's testimony and could only serve to deny any knowledge regarding the origins of the disputed document. A witness whose testimony is, at best, cumulative is not a necessary witness. *(See, O'Donnell, Fox & Gartner v R-2000 Corp.,* 198 AD2d 154; *Burdett Radiology Consultants v Samaritan Hosp.,* 158 AD2d 132, 135.)

■ Finally, we note, the IAS Court, in considering the totality of facts alleged on the cross motion, ignored plaintiff's inexcusable delay of over three years in moving for disqualification. The cross motion was based on facts known to plaintiff since WG&M's first appearance in the case with the service of an answer in early 1990, and was made after the virtual completion of all discovery and the filing of a note of issue and statement of readiness certifying the case's readiness for trial. In fact, the disqualification motion was made only in response to defendants' motion to vacate the note of issue. The grant of

such relief at this late stage of the proceedings requires the retention of new counsel unfamiliar with the case at a significant financial hardship to New York Red Cross. Plaintiff's laches in seeking such relief furnishes an additional consideration especially where, as here, there is an inadequate showing to warrant disqualification. *(Lewis v Unigard Mut. Ins. Co.,* 83 AD2d 919.)

Plaintiff's other arguments, raised originally or for the first time on appeal, are equally without merit.

Accordingly, the order of the Supreme Court, New York County (Diane A. Lebedeff, J.), entered March 3, 1994, to the extent it granted plaintiff's cross motion to disqualify defendants' attorneys, should be reversed, on the law, with costs and disbursements, and the cross motion denied.

CARRO, KUPFERMAN and ASCH, JJ., concur with SULLIVAN, J. P.; ELLERIN, J., dissents and would affirm for the reasons stated by LEBEDEFF, J.

Order, Supreme Court, New York County, entered March 3, 1994, to the extent it granted plaintiff's cross motion to disqualify defendants' attorneys, reversed, on the law, with costs and disbursements, and the cross motion denied.