REGINA G. PRICE, Respondent, v JEFFREY L. PRICE, Appellant. [733 NYS2d 420] —Order, Supreme Court, New York County (Judith Gische, J.), entered June 22, 2001, which, to the extent appealed from as limited by the briefs, denied that

branch of defendant husband's motion seeking to disqualify the law firm of Raoul Lionel Felder, P. C. from continuing to represent plaintiff wife in this matrimonial action, unanimously reversed, on the law, without costs, the motion granted and counsel disqualified.

The order appealed from consolidated an action for divorce brought by plaintiff (represented by the Felder firm) with an action to set aside the parties' prenuptial agreement, also commenced by plaintiff (represented by Philip L. Friedman, Esq.). While the complaint in the divorce action makes no mention of either the agreement or plaintiff's action to set it aside, the answer raises it by way of defense, and it is apparent that the question of whether the agreement should be given effect is the central point of contention. Although plaintiff actively participated in the negotiations, entered into the prenuptial agreement with the assistance of counsel and acknowledged her understanding of its terms and conditions, she maintains that it should be vacated because it is "manifestly unfair" and the product of "fraud, undue influence, duress, coercion and misrepresentation."

The application at issue seeks to disqualify plaintiff's matrimonial counsel, the law firm of Raoul Lionel Felder, P. C., which represented her in negotiating the subject prenuptial agreement. The grounds asserted by defendant in support of disqualification are found in Code of Professional Responsibility DR 5-102 (22 NYCRR 1200.21), which provides, in pertinent part:

"(a) A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client * * *

"(c) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, the lawyer shall not serve as an advocate on issues of fact before the tribunal [except as to certain enumerated matters not relevant to this proceeding]."

The logical predicate for these rules is found in the Ethical Consideration of the rule, specifically Code of Professional Responsibility EC 5-9, which states, in part: "If a lawyer is both counsel and witness * * * the lawyer becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer

also appears as an advocate * * * in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his or her own credibility." Defendant asserts that testimony will be required from an attorney from the Felder firm to ascertain the circumstances leading up to the signing of the prenuptial agreement and that it would therefore be improper to permit any attorney from the firm to represent plaintiff in this case.

Plaintiff relies upon our decision in *Talvy v American Red Cross* (205 AD2d 143, 152, *affd* 87 NY2d 826) for her contention that since the attorney representing her in the divorce action took no part in the preparation of the antenuptial agreement, disqualification of the law firm is unwarranted. She argues that any restriction the Court might place on representation by chosen counsel should be confined to the involvement of Michael Kaper, Esq., the attorney who actually assisted plaintiff during the negotiations. However, as both parties recognize, the applicable standard is the so-called "advocate-witness" rule, the test being the necessity of the attorney's testimony and the implications of that testimony for the adversarial process (*S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.*, 69 NY2d 437, 445-446). Thus, some exploration of the nature of the testimony likely to be required from members of the Felder firm is in order.

Generally, a party that enters into an agreement with the assistance of counsel will not be heard to complain that his or her interests were not adequately safeguarded (*Bo Young Choi v Sei Young Choi*, 167 AD2d 217, 218, *appeal dismissed* 77 NY2d 874; *Golfinopoulos v Golfinopoulos*, 144 AD2d 537, 538, *lv dismissed* 74 NY2d 793; *cf., Batto v Westmoreland Realty Co.*, 231 App Div 103 [mutual mistake]; *Shaw v Shaw*, 97 AD2d 403 [extrinsic fraud]). This policy finds particular application to agreements calculated to avoid litigation, whether made before suit was commenced (e.g., a release) or during the course of litigation (e.g., a stipulated settlement), and is invoked to enforce prenuptial and separation agreements (*Rubenfeld v Rubenfeld*, 279 AD2d 153, 156). In *Matisoff v Dobi* (90 NY2d 127, 136), the Court of Appeals emphasized the necessity for enforcement of pre and postnuptial agreements, expressly rejecting a court's assessment of subsequent developments as a criterion to determine their viability: "spouses or prospective spouses will not need to speculate as to whether the enforceability of their agreements will be supported by their original motivation or subsequent economic relationship during the marriage. Certainly, consistent and predictable enforcement is

desirable with regard to such important marital agreements." The Court of Appeals has gone so far as to hold that even where an attorney, negotiating on a client's behalf, improperly assents to an agreement without actual authority, the client may not evade the terms of the agreement but is consigned to an action against counsel (*Hallock v State of New York*, 64 NY2d 224, 230-231).

More recently, in a case involving some apparently unusual facts, the Court of Appeals permitted a wife to avoid the operation of reciprocal prenuptial agreements, even though she was represented by counsel during the negotiations that resulted in execution of the documents (*Matter of Greiff*, 92 NY2d 341). However, in reaching this conclusion, the Court seems to have completely discounted any assistance that might have been provided by counsel to the wife. The Court recounted the Surrogate's determination that "the husband 'exercised bad faith, unfair and inequitable dealings, undue influence and overreaching when he induced the petitioner to sign the proffered antenuptial agreements,' particularly noting that the husband 'selected and paid for' the wife's attorney" (*supra*, at 344). Although the decision does not otherwise address the adequacy of representation, the implication is that Mrs. Greiff's attorney subordinated her interests to those of his employer, in utter disregard of his professional responsibility to his client (*see*, DR 5-107 [22 NYCRR 1200.26]).

We thus arrive at the essential problem confronting plaintiff's lawyers in this case. The same firm charged with the obligation to protect plaintiff's interests in the negotiations culminating in the signing of the prenuptial agreement will be put in the untenable position of arguing that it abjectly failed in its efforts to protect those interests. The material consideration is not the credibility of a particular lawyer but the general reputation of the firm. No matter which member of the firm appears in the divorce action on plaintiff's behalf, it will be necessary to attack the adequacy of the representation provided to her during the course of negotiations in order to overcome the presumption that her interests were protected.

It strains credulity to argue that a prominent matrimonial firm was deluded by the representations advanced in the complaint: that defendant did not intend to enforce the agreement, that it "was designed only to provide him with a sense of security and that he would not request or insist upon performance on the part of plaintiff or her adherence to its terms." Nor does it seem plausible that the firm would have counseled plaintiff to enter into the agreement based only upon defendant's

"limited financial disclosure prior to the signing of the writing." As any attempt to denigrate the capabilities of the firm by one of its members is apt to be regarded as less than credible, to plaintiff's detriment, disqualification runs to the entire firm, not just to the individual lawyer representing plaintiff in this action. Concur—Rosenberger, J. P., Williams, Mazzarelli, Rubin and Buckley, JJ.