OPINION OF THE COURT
 

 Simons, J.
 

 Stroock & Stroock & Lavan represent plaintiffs in this action to recover damages for asbestos contamination resulting from the use of fireproofing materials manufactured by defendant W. R. Grace & Co. Stroock had previously defended Grace in an action entitled
 
 City of Enterprise v Grace & Co.
 
 (Cir Ct, Coffee County, Ala, Civ No. 85-87), which also involved the contamination of a premises by asbestos. Thus, Grace moved to disqualify the Stroock firm from participating in the present action and the issue is whether it is entitled to that relief.
 

 The courts below disagreed on the question. Supreme Court held that there was a substantial relationship between the issues in the current litigation and those in
 
 City of Enterprise,
 
 
 *306
 
 but denied the motion to disqualify, deciding that Stroock had successfully established that the attorneys presently with the firm had not been privy to any confidences or secrets of Grace acquired during the prior representation. The Appellate Division, relying on our decision in
 
 Cardinale v Golinello
 
 (43 NY2d 288), held that there was an irrebuttable presumption that all the firm’s attorneys had knowledge of confidential information learned during its prior representation of Grace in the
 
 City of Enterprise
 
 matter. Accordingly, it reversed and certified the following question: "Was the order of this Court, which reversed the order of the Supreme Court, properly made?”
 

 I.
 

 A lawyer may not both appear for and oppose a client on substantially related matters when the client’s interests are adverse
 
 (see, Greene v Greene,
 
 47 NY2d 447, 451). Thus, a single practitioner who had previously represented defendant in this matter, would be disqualified from representing plaintiff. The rule has been extended to provide that if one attorney in a firm is disqualified from representing a client, then all attorneys in the firm are disqualified
 
 (Cardinale v Golinello, supra).
 
 This is so because there is an irrebuttable presumption of shared confidences among attorneys employed by the firm which forecloses the firm from representing others in the future in substantially related matters.
 

 The rule fully implements attorneys’ fiduciary duties of loyalty and confidentiality to the client and their ethical obligation to avoid the appearance of impropriety. In the case before us, however, the attorney who represented Grace in the prior matter, one of 372 attorneys employed by Stroock, left the firm well before it was retained in this litigation. In these circumstances, Stroock contends that the strict enforcement of the irrebuttable presumption rule gives too much weight to those ethical concerns and unduly impairs related policy objectives involving the right of clients to select counsel of their choice and favoring the mobility of attorneys. It maintains that it should be able to avoid disqualification by demonstrating that the remaining attorneys have no knowledge of the client’s prior matter; that the client’s confidences and secrets, if any there were, left with the departing partner. For the reasons which follow, we conclude Stroock is correct. We, therefore, reverse the order of the Appellate Division and answer the certified question in the negative.
 

 
 *307
 
 II.
 

 Stroock was retained as cocounsel in this case in 1992, some five years after the action was commenced, by plaintiffs’ attorney-of-record. Earlier it had represented Grace in work performed principally by attorney Barbara Billauer. She had been a partner at Anderson Russell Kill & Olick from 1982 to 1986 and while there had represented Grace as a defendant in asbestos lawsuits. In 1986 Ms. Billauer left the Anderson office and became a partner at Stroock. She remained there until 1990. During that time, in the six months between September 30, 1986 and March 18, 1987, Stroock performed work on behalf of Grace in the
 
 City of Enterprise
 
 litigation.
 

 The retention of Stroock in
 
 City of Enterprise
 
 was made, on Grace’s behalf, by the Boston law firm of Goodwin, Procter & Hoar, counsel defending Grace nationally in asbestos matters. The Goodwin firm hired Stroock for the limited purpose of preparing Dr. Seaton, an independent expert retained by Grace, for deposition and possible testimony. Ms. Billauer, assisted by a first-year associate and several paralegals, was responsible for the matter and reported to Stroock partners Jay Mayesh and Joseph Forstadt. She and the associate and paralegals who assisted her have all left Stroock. While Mr. Forstadt remains and is expected to play a major role in Stroock’s current representation of plaintiffs, Supreme Court found that his role in the
 
 City of Enterprise
 
 litigation was negligible. Indeed, billing records show that neither Mr. Mayesh nor Mr. Forstadt billed any time to Grace on the matter. Joseph Giamboi, a Stroock first-year associate at the time of the
 
 Enterprise
 
 litigation, billed 30 minutes to Grace. Mr. Giamboi stated in his affidavit that he had been involved in planning a presentation on asbestos at the time and, for that purpose, he had reviewed copies of published articles concerning the subject which were in the
 
 City of Enterprise
 
 files. He denies having reviewed any confidential information concerning Grace or its expert. However, like Mr. Forstadt, Mr. Giamboi is actively involved in the current litigation and is scheduled to depose several Grace experts.
 

 A Stroock associate who reviewed the files relating to the
 
 City of Enterprise
 
 matter, stated in the moving papers that they contained only published articles about asbestos and contained no confidential or proprietary information concerning Grace. Ms. Billauer also swore that her representation of Grace while at Stroock consisted solely of drafting a hypothet
 
 *308
 
 ical direct trial examination of Dr. Seaton and preparing him for trial. This preparation, she stated, was based exclusively on her collection and review of public documents on the subject and Dr. Seaton’s medical expertise. Finally, Ms. Billauer stated that the only people with whom she might have discussed her prior representation of Grace while at Anderson Russell were a first-year associate and a paralegal, both of whom have since left Stroock. The statements in these affidavits were corroborated by the evidence contained in Stroock’s computerized billing records. Based upon this, Stroock maintains that it has rebutted any claim that its representation of plaintiff will compromise confidences of Grace and that because it has done so it should not be disqualified.
 

 In denying Grace’s motion, Supreme Court reasoned that while the presumption of knowledge among attorneys in a firm is irrebuttable so long as the attorney who worked on the prior matter remains at a firm, the presumption that those remaining are aware of client confidences in cases they themselves did not handle is rebuttable after the affected attorney leaves and that Stroock had sufficiently rebutted it in this case. The Appellate Division, in reversing, believed that the possibility that client confidences had been shared could not be discounted, and that, absent client consent, Stroock should be disqualified.
 

 III.
 

 A party seeking to disqualify an attorney or a law firm, must establish (1) the existence of a prior attorney-client relationship and (2) that the former and current representations are both adverse and substantially related
 
 (Cardinale, supra,
 
 at 295-296;
 
 see also, T. C. Theatre Corp. v Warner Bros. Pictures,
 
 113 F Supp 265, 268,
 
 rearg denied
 
 125 F Supp 233; Developments in the Law,
 
 Conflicts of Interest in the Legal Profession,
 
 94 Harv L Rev 1244, 1318
 
 ["Conflicts of Interest”]).
 
 Assuming that the former client has satisfied that burden, what effect are courts to give the presumption of disqualification under the present circumstances: is the issue concluded or may the client’s former law firm rebut the presumption?
 

 Analysis begins with examining the purposes of the rule. The irrebuttable presumption is employed to fully protect client confidences and secrets, to offer a clear test which is easy to administer and to avoid an appearance of impropriety on the part of the attorney or the law firm.
 

 
 *309
 
 First among these concerns is the protection of client confidences. An attorney may not disclose or use adversely information confided by former or current clients (Code of Professional Responsibility DR 4-101 [B] [22 NYCRR 1200.19 (b)];
 
 and see,
 
 Code of Professional Responsibility DR 5-108 [A] [2] [22 NYCRR 1200.27 (a) (2)]). When an attorney represents a party against a former client the current client’s interest in vigorous representation potentially threatens the former client’s expectation of confidentiality. The rule is designed to free the former client from any apprehension that matters disclosed to an attorney will subsequently be used against it in related litigation
 
 (see, Cardinale,
 
 43 NY2d, at 295; Code of Professional Responsibility DR 4-101). Thus, the Code imposes a continuing obligation on the attorney to respect the client’s confidences, even after a matter has concluded. The use of an irrebuttable presumption of disqualification insures that this obligation is enforced and that client confidences and secrets will never be misused in substantially related and adverse litigation.
 

 Second, the rule avoids the "appearance of impropriety” on the part of the attorney or the law firm. Whether a conflict actually exists could be determined by a hearing but the rule requires disqualification even when there may not, in fact, be any conflict of interest so that any suggestion of impropriety is avoided
 
 (see, Cardinale,
 
 43 NY2d, at 296; Code of Professional Responsibility Canon 9;
 
 Conflicts of Interest, op. cit.,
 
 at 1358-1359; Note,
 
 Attorney Disqualification: The Case for an Irrebuttable Presumption Rebutted,
 
 44 Alb L Rev 645, 649-650). An irrebuttable presumption of disqualification is favored over a hearing because it avoids the danger that an inquiry may destroy the very confidences sought to be protected
 
 (see, NCK Org. v Bregman,
 
 542 F2d 128, 134-135;
 
 Conflicts of Interest, op. cit.,
 
 at 1329).
 

 Finally, the rule provides a test which, because of the ease of its application, becomes a strong aid in self enforcement among members of the legal profession.
 

 Thus, this per se rule of disqualification protects all of the ethical concerns implicated by successive representations. It does so, however, at a substantial cost to current clients, to the public-at-large and to the legal profession. It is unnecessarily preclusive because it disqualifies all members of a law firm indiscriminately, whether or not they share knowledge of former client’s confidences and secrets. As a result the rule
 
 *310
 
 may cause a current client to face significant hardships when the chosen attorney is disqualified, thus depriving the client of the specialized knowledge of counsel of choice and forcing the client to familiarize a new attorney with the matter.
 

 Moreover, because of the rigor of the rule, motions to disqualify are frequently used as an offensive tactic, inflicting hardship on the current client and delay upon the courts by forcing disqualification even though the client’s attorney is ignorant of any confidences of the prior client. Such motions result in a loss of time and money, even if they are eventually denied. This Court and others have expressed concern that such disqualification motions may be used frivolously as a litigation tactic when there is no real concern that a confidence has been abused
 
 (see, S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.,
 
 69 NY2d 437, 443;
 
 Melamed v ITT Cont. Baking Co., 592
 
 F2d 290, 295).
 

 A per se disqualification rule also conflicts with public policies favoring client choice and restricts an attorney’s ability to practice
 
 (see, Denburg v Parker Chapin Flattau & Klimpl,
 
 82 NY2d 375, 380;
 
 Cohen v Lord, Day & Lord,
 
 75 NY2d 95, 98). While those concerns are not sufficient to override the important ethical considerations which underlie the rule, it is a fact of life that many attorneys in today’s society spend a substantial portion of their careers with large firms such as Stroock. To attach to those attorneys an irrebuttable presumption that they have knowledge of all the business the firm handled during their employment, and thus are disqualified from later appearing in matters substantially related to any part of it, seriously disadvantages them and the clients who wish to retain them.
 

 IV.
 

 Our decision in
 
 Cardinale v Golinello
 
 (43 NY2d 288,
 
 supra)
 
 and the Second Circuit’s decision in
 
 Silver Chrysler Plymouth v Chrysler Motors Corp.
 
 (518 F2d 751)
 
 *
 
 present two different settings illustrating these competing interests in disqualification cases. As the decisions suggest, the purposes of the irrebuttable presumption may be satisfied in different ways depending on the nature of the law firm and the character of
 
 *311
 
 its practice. In smaller, more informal settings the imputation of knowledge as a matter of law is necessary to protect the client and avoid the appearance of impropriety. In other circumstances the risk of conflict is so minimal that the danger of it occurring is outweighed by policy considerations militating against an irrebuttable presumption.
 

 In
 
 Cardinale,
 
 a partner in Halperin, Somers & Goldstick, P. C., had represented defendant Golinello in connection with the purchase of corporate capital stock. After the transaction had been completed, attorney Charles Schiller joined the Halperin firm. The firm continued to represent defendant after Schiller’s arrival, but Schiller did not render legal services on Golinello’s behalf. Schiller subsequently left the Halperin firm and became associated with the law firm of King & King. Thereafter, plaintiffs retained the King firm in connection with claims against Golinello and members of the Halperin firm arising out of the earlier stock purchase. Upon learning that Schiller had been retained by the King firm to handle the matter, defendant Golinello moved to disqualify both the King firm and Schiller.
 

 We began our analysis by noting that Halperin was "a small firm whose activities were characterized by an understandable informality” in which "there was a 'constant cross-pollination’ ” and " 'cross current of discussion and ideas’ ” among the employees
 
 (Cardinale, supra,
 
 at 292). Given that atmosphere, we believed Schiller had likely become aware of confidential information concerning Golinello while with Halperin. Indeed, it was of "no moment” that Schiller had never rendered legal services to Golinello, we said, because, by being an attorney associated with Golinello’s attorney, the possibility was simply too great that he had wittingly or unwittingly acquired confidential information concerning Golinello. We also expressed concern over the appearance of impropriety, for if Schiller were allowed to represent plaintiffs in the current action, laypersons might well believe that he was being hired not only because of his legal talent, but also because of confidential information that he possessed.
 

 We concluded, therefore, that Schiller was properly disqualified from the current litigation. No inquiry was required: disqualification arose "simply from the fact that the lawyer, or the firm with which [the lawyer] was then associated, represented the former client in matters related to the subject matter of the second representation”
 
 (Cardinale, supra,
 
 at
 
 *312
 
 295). The King firm was similarly disqualified under the principle that if one attorney in a firm is barred from representing a client, then all attorneys in a firm are likewise precluded from such representation.
 

 Our holding in
 
 Cardinale
 
 reflected the prevailing understanding that the duty of loyalty owed to a former client and the avoidance of even an appearance of impropriety are so important that any harm associated with disqualification was minimal when compared with furthering those goals
 
 (see generally, T. C. Theatre Corp., supra;
 
 Note,
 
 Federal Courts and Attorney Disqualification Motions: A Realistic Approach to Conflicts of Interest,
 
 62 Wash L Rev 863, 875-876). Our determination did not rest on the size of the firm or the number of lawyers it employed, although those factors were relevant. It was based upon our recognition that in firms such as Halperin attorneys are so intimately acquainted with all the work in the office that they can be expected to share client confidences and ideas about how to handle client problems as a matter of course
 
 (Cardinale,
 
 at 292;
 
 see also, Conflicts of Interest, op. cit,
 
 at 1355). Thus, we found unpersuasive Federal decisions dealing with law firms of a different type and rejected them without discussion.
 

 One of those Federal decisions was
 
 Silver Chrysler Plymouth v Chrysler Motors Corp. (supra).
 
 It involved a firm of quite different makeup and practice. In
 
 Silver Chrysler,
 
 attorney Schreiber was associated with the Hammond law firm, which was representing Silver Chrysler in its action against Chrysler. Schreiber had previously been associated with the firm of Kelley, Drye & Warren, which had represented Chrysler for many years. Upon learning that Schreiber had worked on several Chrysler matters while at Kelley Drye, Chrysler moved to disqualify him and his new firm.
 

 The Second Circuit began its analysis, as this Court had in
 
 Cardinale,
 
 by reviewing the type of firm involved and the nature of its work. At the time Kelley Drye, unlike the Halperin firm in
 
 Cardinale,
 
 was a firm of some 80 lawyers segregated into different departments. The court reasoned from this that it would be "absurd” to assume that upon entry into the firm an attorney, by "osmosis,” became aware of every client of the firm and shared in all of the client confidences and secrets which the firm, as a whole, possessed. Because of this the Second Circuit held that the presumption of disqualification should be a rebuttable one; quite simply, it
 
 *313
 
 said, there are valid reasons for differentiating "between lawyers who become heavily involved in the facts of a particular matter and those who enter briefly on the periphery”
 
 (id.,
 
 at 756). The court reasoned that to apply the remedy of disqualification when there is no realistic chance that confidences were disclosed would go far beyond the purposes of a strict disqualification rule
 
 (id.,
 
 at 757).
 

 V.
 

 As these decisions illustrate, any fair rule of disqualification should consider the circumstances of the prior representation. If an attorney has represented a client in an earlier matter and then attempts to represent another in a substantially related matter which is adverse to the interests of the former client, the presumption of disqualification is irrebuttable. Thus, if Ms. Billauer had attempted to represent plaintiffs in their current action against Grace, she would be disqualified from doing so and the imputation of shared confidences with her partners might be so obvious from the facts that her new firm would also be disqualified as a matter of law
 
 (see, Cardinale v Golinello, supra).
 

 In this matter, however, Stroock seeks to represent plaintiffs and Ms. Billauer, who handled the Grace matter while at Stroock, has moved to another firm. Under these circumstances the ethical considerations which support a per se disqualification rule have considerably less force and may be overridden by competing policy concerns. In this situation the court must presume that the rights of the former client are jeopardized by Stroock’s subsequent representation of plaintiffs, but Stroock should be allowed to rebut that presumption by facts establishing that the firm’s remaining attorneys possess no confidences or secrets of the former client. That procedure does no violence to our existing rules. In firms characterized by the informality exhibited by the Halperin firm in
 
 Cardinale,
 
 disqualification will be imposed as a matter of law without a hearing. If the firm can demonstrate prima facie that there is no reasonable possibility that any of its other attorneys acquired confidential information concerning the client, a hearing should be held after which the court may determine that disqualification may be unnecessary. The evidence must be sufficient, however, to establish that the former client’s interests are fully protected and to overcome any suggestion of impropriety.
 

 
 *314
 
 The record in this case establishes that the only matter handled by Stroock for Grace was the preparation of Dr. Seaton as an expert witness in the
 
 City of Enterprise
 
 litigation. The people primarily responsible for handling that matter left the firm several years prior to this current representation, and the attorneys remaining at Stroock had, at most, limited contact with the
 
 City of Enterprise
 
 matter. Moreover, the informality which was the hallmark of the Halperin firm in
 
 Cardinale,
 
 is not usually found in large, departmentalized firms such as Stroock and that suggests that representation is permissible.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, defendant’s motion to disqualify the law firm of Stroock & Stroock & Lavan from representing plaintiffs in this action denied, and the certified question answered in the negative.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Titone taking no part.
 

 Order reversed, etc.
 

 *
 

 That part of
 
 Silver Chrysler
 
 which held that orders denying disqualification motions are appealable was overruled by
 
 Armstrong v McAlpin
 
 (625 F2d 433, 440), which was vacated on the interlocutory appeals issue in
 
 McAlpin v Armstrong
 
 (449 US 1106).