OPINION OF THE COURT
Lee Elkins, J.
This is a proceeding to free the child T’Challa D. for adoption, pursuant to Social Services Law § 384-b (7) (a), on the *637 grounds that her mother failed to plan for her by failing to acknowledge the risk posed to the child by her continuing relationship with the child’s father.[1] The respondent mother moves to disqualify the law guardian, an attorney for the Juvenile Rights Division of the Legal Aid Society (JRD), under Code of Professional Responsibility DR 5-105 (22 NYCRR 1200.24). This case involves the representation, by a single firm, of different clients in separate yet factually related judicial proceedings. In this termination of parental rights proceeding, the firm represents the child. The Legal Aid Society as law guardian consistently has questioned whether the respondent mother continued to have a relationship with the child’s father, which the law guardian contends would place the child at risk if she were returned to the mother. On this ground, the law guardian has opposed the release of the child to the respondent mother. In a subsequent criminal prosecution, the Legal Aid Society represented the mother. The firm, as defense counsel for the mother presented her to the grand jury, although she was a target of the grand jury proceeding. After waiving immunity, the mother gave testimony that she was with the father in July 2002, and she describes him as her common-law husband. The mother was indicted. That testimony has affirmatively damaged her position in the termination of parental rights case.
The petitioner filed this termination of parental rights proceeding on April 19, 2001.[2] Trial began on the petition February 7, 2002. The court also heard testimony on February 8 and July 31, 2002.[3] The respondent mother and the father were arrested together in the Bronx, on July 24, 2002. Although she appeared in court within a week of this arrest, the respondent did not disclose the arrest to the court.[4] When the trial continued on September 6, 2002, the respondent mother failed to appear. Counsel for the respondent informed the court that the respondent was testifying before the grand jury in Bronx County. Counsel did not disclose the circumstances surrounding the respondent’s testimony before the grand jury. *638 The court granted a continuance at the request of respondent’s counsel. Trial continued on October 16, 2002, February 25, March 12 and March 21, 2003.®
The respondents initially came before the court on a neglect case, based upon the death of one of their children, an infant, while in the father’s care.[5]
[6] The mother entrusted that child and the subject child to the father, despite knowing about the father’s violent history. An autopsy revealed bilateral fractures of the ribs. Evidence in the underlying neglect proceeding established a history of violence by the father against the mother. A crucial issue at trial of the termination of parental rights proceeding was whether the respondent mother continued to have contact with the respondent father, despite domestic violence counseling and her adamant denials of continued contact.
During the respondent’s testimony on March 21, 2003 she revealed that she and the respondent father both were arrested on July 24, 2002 and that she had testified before the Bronx grand jury in relation to those arrests. The mother contended that the father’s presence at the time and place of their mutual arrest was a coincidence, and that he had come to her aid after she had been attacked by a housing patrol officer. After the respondent testified, petitioner’s counsel sought a continuance in order to apply to the Bronx Supreme Court for release of the grand jury minutes. On March 28, 2003, the date set for continued trial, petitioner’s counsel informed the court that in the course of filing an order to show cause for disclosure of the Bronx grand jury minutes, he learned that the respondent mother was represented in the Bronx by the Criminal Defense Division of the Legal Aid Society (CDD). This was the first disclosure by anyone that the Legal Aid Society, for eight months, had represented both the respondent in the criminal prosecution and the child in the termination of parental rights action. The court, sua sponte, directed the law guardian to ensure that no information obtained by the attorney representing the mother in the Bronx prosecution was communicated to the law guardian, and that no information the law guardian obtained in the course of representing the child was communicated to the attorney in the Bronx. The court also directed a supervisor from the Legal Aid Society to obtain a statement from the Society’s central office regarding provisions to ensure *639 that there was an impenetrable boundary between the two divisions.
On April 4, 2003, respondent’s counsel filed a motion to disqualify the Legal Aid Society from representing the child in this proceeding. In reply, the law guardian notes that she has represented the child for over four years. She avers that she had no knowledge of the dual representation until notified by petitioner’s counsel on March 27, 2003. She also avers that she had no communication with the CDD attorney representing the respondent mother in the Bronx prosecution. She further avers that immediately following the proceeding of March 28, a supervisor from Brooklyn JRD notified Bronx CDD that the attorney representing the mother in the criminal prosecution must withdraw. The law guardian states without contradiction that CDD immediately withdrew from representing the mother in the Bronx prosecution.
The director of Legal Support of the Legal Aid Society, on April 11, 2003, provided a letter to the court regarding the Legal Aid Society’s “conflict wall” procedures “where the respondent in a termination of parental rights proceeding or other child protective proceeding is a former client of another Division of the Legal Aid Society.” The letter states that “one of the reasons the Legal Aid Society has determined that its Divisions can and should consider erecting conflict walls, rather than extinguishing longstanding and important attorney-client relationships, is that the sheer size of and division of functions within the Society ordinarily preclude any possibility that client confidences or secrets will be disclosed to a lawyer representing a client whose interests are adverse to those of a former Society client.” The procedure in place is described as follows: “As soon as a JRD trial attorney learns that the respondent is or has been represented by another Division of the Legal Aid Society, the attorney is required to notify a supervisor and is thereafter barred from participating in any investigation into the nature and circumstances of the conflict. The attorney never speaks to the Society attorney who represented the respondent or to any other Society employee involved in the prior representation, and neither the attorney or his/her supervisor, nor anyone else from JRD, is ever allowed access to respondent’s file. Indeed, the Society has a strict policy prohibiting any attorney from accessing the file of a former client who is a witness or litigant in a case involving a current client. Thus, the JRD attorney, who is obligated to provide zealous representation to the children, will conduct a thorough *640 factual investigation, but one that is free of taint from any violation of the former client’s confidentiality rights.”
There is no question but that the Legal Aid Society, by undertaking to represent the respondent mother in the grand jury, created a conflict of interest. The mother’s testimony before the grand jury provided the petitioner in the termination of parental rights case with devastating admissions, squarely relating to the facts at issue in the termination of parental rights case, which otherwise would have remained ambiguous and difficult to prove. A single attorney could not have represented the mother before the grand jury and the child before this court in the termination of parental rights case, and have pursued the strategy of the Legal Aid Society in the Bronx case. The problem may be dramatically illustrated by imagining that the law guardian herself represented the mother before the grand jury and then, in her capacity as law guardian in the termination of parental rights case, produced the records of the grand jury proceedings to confront the mother with her damaging admissions.
The Law
There are two analytically distinct conflicts presented by these facts. First, there was the conflict present during the eight-month period when the Legal Aid Society simultaneously represented the child in the termination of parental rights proceeding and the mother in the criminal prosecution. Second, there is the potential conflict presented by JRD’s continuing representation of the child in the termination of parental rights proceeding against the respondent mother, who is now a former client, in a matter which is substantially related to the prior representation.
Attorney conduct in New York State is governed by a version of the Model Code of Professional Responsibility, which has been adopted by the Appellate Divisions of the Supreme Court as 22 NYCRR part 1200. Code of Professional Responsibility DR 5-105 (a) (22 NYCRR 1200.24 [a])[7] is the main provision governing issues of conflict between multiple clients. Under subdivision (a) of this section “[a] lawyer shall decline proffered *641 employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interests * * (22 NYCRR 1200.24 [a].) While lawyers are associated in a law firm, none of them shall knowingly accept or continue employment when any one of them practicing alone would be prohibited from doing so. (22 NYCRR 1200.24 [d].)
Simultaneous Representation
As to simultaneous representation, where a lawyer accepts employment which may be inconsistent with the interests of an existing client, the propriety of this conduct must be measured primarily by the duty of undivided loyalty which an attorney owes to each client. (7A CJS, Attorney and Client § 150.) Given the conflicts inherent in simultaneous representation, a prima facie rule of disqualification applies where there is an existing attorney-client relationship on behalf of a client whose interests may be adverse to the interests of another current client. “In this manner, counsel’s fundamental duty of undivided loyalty to his client may properly be ensured (see, Matter of Kelly, 23 NY2d 368, 376; Code of Professional Responsibility Canon 5).” (Aerojet Props. v State of New York, 138 AD2d 39, 41 [3d Dept 1988].) Under this standard, where the relationship is a continuing one, adverse representation is prima facie improper (Matter of Kelly, supra, 23 NY2d at 376), and the attorney must be prepared to show, at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of representation. (Cinema 5, Ltd. v Cinerama, Inc., 528 F2d 1384 [2d Cir 1976]; Leonardo v Leonardo, 297 AD2d 416, 418 [3d Dept 2002].) The prima facie rule of disqualification applies, even though the simultaneous repre *642 sentation occurred unknowingly and inadvertently. (See, e.g., Cinema 5, Ltd. v Cinerama, supra.)
Where JRD and CDD simultaneously represent clients whose interests are adverse, the court finds that the divisions must be treated as a single law firm. (Cf., e.g. Matter of Destiny D., 2002 NY Slip Op 50454[U] [Fam Ct, Queens County 2002].) It is necessary to treat the separate divisions of the Legal Aid Society as a single firm, in order to protect the clients’ interests. The clients’ interests in avoiding simultaneous representation of adverse parties by different divisions of the Legal Aid Society are not limited to the danger of disclosure of confidential information within the firm (cf., e.g., see, People v Wilkins, 28 NY2d 53 [1971]), or to the actual effect of simultaneous representation upon the duty of undivided loyalty owed to each client. The clients’ interests also include the client’s confidence in the firm’s single-minded advocacy. “[A] lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship; and the simultaneous representation of the opposing parties, even though on unrelated matters, is at best unseemly. Thus, the impropriety of an attorney’s undertaking inconsistent duties is gauged by the suspicion with which his acts might be viewed by the public, and an attorney must avoid not only the fact, but even the appearance, of representing conflicting interests.” (7A CJS, Attorney and Client § 153; and see, Matter of Kelly, supra, 23 NY2d at 376.)
In the instant case, there is no question but that the interests of the respondent mother and child were adverse. As previously described, the respondent mother’s interest in asserting a justification defense before the Bronx grand jury on her behalf and on behalf of the respondent father was adverse to her position in the termination of parental rights litigation where she claimed no continuing relationship with the respondent father. The foregoing principles give rise to a presumption that she should not have been represented before the grand jury by the firm which also represented the child before this court. The burden therefore falls on the Legal Aid Society to demonstrate that “a disinterested lawyer would believe that the lawyer [could] competently represent the interest of each [client].” (22 NYCRR 1200.24 [c].) The Legal Aid Society offers no evidence that the respondent mother and the child could be represented competently by a single firm, without creating an apparent conflict of loyalties. (See, e.g., Raymond v Raymond, *643 174 Misc 2d 158 [Fam Ct, Albany County 1997].) Nor has the Legal Aid Society shown that the mother consented to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved. (22 NYCRR 1200.24 [c].)
Under the code, “[a] lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer’s representation of another client, or if it would be likely to involve the lawyer in representing differing interests.” (22 NYCRR 1200.24 [b].) Where an attorney represents two clients simultaneously and their interests are adverse, the court may disqualify the attorney from appearing in the case or permit the attorney voluntarily to withdraw. (Annotation, Representation of Conflicting Interests As Disqualifying Attorney from Acting in a Civil Case, 31 ALR3d 715 [1970].)
Here, the Legal Aid Society withdrew from representing the respondent mother in the Bronx criminal prosecution. The law guardian asserts, without contradiction, that the motion to withdraw was made as soon as the conflict became known to the Legal Aid Society. As soon as the CDD attorney withdrew from representing the mother, the difficulty presented by the simultaneous representation of adverse interests was resolved.
The remaining issue is whether the simultaneous representation requires that both divisions of the Legal Aid Society be disqualified. There is no per se rule that counsel withdraw from representing both clients, even where there has been simultaneous representation of potentially adverse interests. (See, e.g., Matter of Jason C., 268 AD2d 587 [2d Dept 2000] [balancing equities].) If the conflict arises or becomes foreseeable only after both representations are underway, withdrawal from one of the cases may be possible. (Rotunda, Legal Ethics: The Lawyer’s Deskbook of Professional Responsibility § 8-6 [2002-2003 ed].) Counsel and the court should consider the priority in time of the commencement of the representations as well as the balance of equities in terms of the prejudice arising from the withdrawal. (ABA Comm on Ethics and Prof Responsibility, Formal Op 92-367, at 8 [1992], cited in Legal Ethics: The Lawyer’s Deskbook on Professional Responsibility § 8-6 [2002-2003 ed].)
In this case, there is no evidence that the Legal Aid Society knowingly undertook simultaneously to represent both the parent and the child. The court must balance the equities to *644 preserve the interests of the affected clients, as far as possible, taking into account the duration of existing attorney-client relations and the effect of disqualification upon the interests at stake in the litigation. (See, e.g., Aerojet Props, v State, supra, 138 AD2d at 42 [“to disqualify Carter Conboy after extensive involvement in this lawsuit for more than four years would prove patently unfair to both the law firm and its client. The circumstances simply do not warrant such drastic relief’], cited with approval in Siroty v Nelson, 200 AD2d 617 [2d Dept 1994].)
The equities do not favor disqualification of the law guardian. The law guardian has a long-standing relationship with the child, which arose years before CDD undertook to represent the mother. There is no evidence that information obtained by one division was shared with the other, and no evidence that the simultaneous representation had any effect on the law guardian’s representation of the child. Under these circumstances, the court finds that the withdrawal of CDD counsel satisfied the Society’s ethical duty and resolved the prima facie conflict.
Serial Representation
The question remains whether the law guardian must be disqualified because the respondent mother is now a former client of the Legal Aid Society in a matter which is substantially related to this litigation. This question is governed by the Court of Appeals analysis in Solow v Grace & Co. (83 NY2d 303 [1994]). In Solow, the Court held that a party opponent is entitled to a presumption of disqualification of an adversary’s counsel who has a prior attorney-client relationship with the party, and where the former and current representations are adverse and substantially related. For the reasons stated in the findings of fact, the respondent mother in this case has established these factors with regard to the Legal Aid Society’s representation of her in the Bronx prosecution. Therefore, she is entitled to a presumption of disqualification of the Legal Aid Society from representing the child in this termination of parental rights proceeding.
The Court of Appeals in Solow, analyzing the operation of the' presumption, focused on the purposes served by disqualification. The Court noted that the “presumption is employed to fully protect client confidences and secrets, to offer a clear test which is easy to administer and to avoid an appearance of impropriety on the part of the attorney or the law firm.” (83 NY2d at 308.) Ordinarily, disqualification does not *645 require a hearing. However, the Court of Appeals also held in Solow that to apply an irrebuttable presumption in all cases exacts too high a cost from the existing client and to the judicial process. The Court acknowledged that such an exacting rule is subject to abuse as an “offensive tactic, inflicting hardship on the current client and delay upon the courts by forcing disqualification even though the client’s attorney is ignorant of any confidences of the prior client. Such motions result in a loss of time and money, even if they are eventually denied. This Court and others have expressed concern that such disqualification motions may be used frivolously as a litigation tactic when there is no real concern that a confidence has been abused.” (83 NY2d at 310.) Therefore, in an appropriate case “the ethical considerations which support a per se disqualification rule have considerably less force and may be overridden by competing policy concerns.” (83 NY2d at 313.)
Where the potentially conflictual representation is undertaken by a large firm, one of whose members formerly represented an adversary, the attorney may be given an opportunity to rebut the presumption with facts “establishing that the firm’s remaining attorneys possess no confidences or secrets of the former client. * * * If the firm can demonstrate prima facie that there is no reasonable possibility that any of its other attorneys acquired confidential information concerning the client, a hearing should be held after which the court may determine that disqualification may be unnecessary. The evidence must be sufficient, however, to establish that the former client’s interests are fully protected and to overcome any suggestion of impropriety.” (Solow v Grace & Co., supra, 83 NY2d at 313.)
First among the concerns is the protection of client confidences. The presumption is designed to free the former client from any apprehension that matters disclosed to an attorney will be used subsequently against the client in related litigation. In this case, there is virtually no danger that the Brooklyn JRD attorney may misuse the respondent’s mother’s confidences to the CDD attorney who represented her in the Bronx case. (See, e.g., Matter of Destiny D., 2002 NY Slip Op 50455[U] [Fam Ct, Queens County 2002]; cf., e.g., People v McLaughlin, 174 Misc 2d 181, 187 [Sup Ct, NY County 1997].) As the letter from the Society states, “sheer size of and division of functions within the Society ordinarily preclude any possibility that client confidences or secrets will be disclosed to a lawyer representing a client whose interests are adverse to *646 those of a former Society client.” This was recognized by the Court of Appeals in People v Wilkins (28 NY2d 53 [1971]), where the defendant’s Legal Aid attorney failed to discover that the complainant had been represented by the Society in an unrelated criminal prosecution. There the Court observed (at 56) that “[w]hile it is true that for the purpose of disqualification of counsel, knowledge of one member of a law firm will be imputed by inference to all members of that law firm, we do not believe the same rationale should apply to a large public-defense organization such as the Legal Aid Society.” The same reasoning applied in Solow, which involved a large private law firm.[8] Here, of course, there is no evidence that any information obtained by the Bronx CDD attorney ever was shared with JRD in Brooklyn. In fact, the law guardian avers, without contradiction, that she obtained no information from Bronx CDD about the mother’s prosecution.
It is significant that in this case the information which impacts on the respondent mother’s position in the termination of parental rights case was voluntarily disclosed by her, in order to obtain a potential benefit in the Bronx prosecution. The information was in no way obtained through any attorney from the Legal Aid Society. Rather, the information was obtained by the petitioner under a court order from the judge presiding over the Bronx grand jury. The mother in disclosing the information to the grand jury waived her privilege against self-incrimination and any attorney-client privilege with regard to the statements she made to the grand jury. This waiver was preceded by warnings as to the potential use of the statements against her in the prosecution. (CPL 190.50 [5]; 190.45.) Consequently, under these circumstances, there necessarily was a knowing and voluntary waiver of any confidentiality with regard to the statements themselves.
The second purpose of the presumption of disqualification is to avoid the appearance of impropriety on the part of the attorney or the law firm. “Whether a conflict actually exists could be determined by a hearing but the rule requires disqualification even when there may not, in fact, be any conflict of inter *647 est so that any suggestion of impropriety is avoided. An irrebuttable presumption of disqualification is favored over a hearing because it avoids the danger that an inquiry may destroy the very confidences sought to be protected.” (Solow v Grace & Co., supra, 83 NY2d at 309 [citations omitted].)
In this court’s view, the law guardian’s continued representation of the child does not give rise to an appearance of impropriety, upon the facts of this case. The JRD attorney, who has represented the child for almost four years, engaged in no improper conduct. Rather, the CDD attorney in the Bronx apparently failed to determine whether the respondent in this case had other legal matters pending at the time CDD undertook to represent her. The law guardian avers, without contradiction, that the Bronx CDD attorney was unaware of JRD’s representation of the child in the termination of parental rights proceeding pending against the mother in Brooklyn. The respondent must bear some responsibility for this state of affairs.
The respondent, the only person involved who was aware of the potential conflict of interest, failed for eight months to reveal the pending termination of parental rights proceeding to her criminal defense attorney. She also failed to disclose the true nature of the Bronx grand jury proceeding to her attorney in the termination of parental rights case. Her failure to do so may have been calculated to avoid the disclosure of the information which is now a matter of record in this case. Certainly, had she done so, the revelation would have provoked an investigation by her present counsel, resulting in earlier discovery of the Legal Aid Society’s dual representation. Whatever her motive, the delay results in the motion to disqualify the law guardian literally at the final stage of the termination of parental rights trial, which has been ongoing for two years and which now is submitted for decision.
The delay of eight months in seeking this relief is a significant factor which weighs against disqualification. (See, e.g., Fugnitto v Fugnitto, 113 Misc 2d 666, 668 [App Term 1982].) Where a belated motion to disqualify results in tactical advantage, laches may properly be taken into account, especially when it does not appear that the attorney has used any confidences imparted by the former client. (See, e.g., Lucci v Lucci, 150 AD2d 650 [2d Dept 1989] [husband’s motion to disqualify the firm representing his wife, on the eve of trial, denied in light of husband’s knowledge that the firm previously represented him]; and see, Talvy v American Red Cross in *648 Greater N.Y., 205 AD2d 143 [1st Dept 1994], affd 87 NY2d 826 [1995].)
Finally, the court may not ignore the significant burden that further delay of these proceedings would place on the child, whose need for permanency must be the paramount consideration.
Therefore, for the foregoing reasons, the respondent’s motion to disqualify the law guardian in the instant proceeding is deniéd.

. The respondent father has failed to appear or to participate in this proceeding.

. The inordinate delay in completing the case has been due in part to a substitution of trial counsel for the respondent mother, when the previous attorney temporarily left the 18-b panel.

. The court assigned the current attorney on May 17, 2002.

. The record is silent, and the court did not inquire, as to when the respondent revealed the nature of the arrest and the identity of her counsel to her attorney in this proceeding.

. The matter is submitted for decision.

. The infant died of pneumonia.

. “22 NYCRR 1200.24 [DR 5-105] Conflict of interest; simultaneous representation.
“(a) A lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under subdivision (c) of this section.
*641 “(b) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a. client will be or is likely to be adversely affected by the lawyer’s representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under subdivision (c) of this section.
“(c) In the situations covered by subdivisions (a) and (b) of this section, a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved.
“(d) While lawyers are associated in a law firm, none of them shall knowingly accept or continue employment when any one of them practicing alone would be prohibited from doing so under section 1200.20 (a), 1200.24 (a) or (b), 1200.27 (a) or (b), or 1200.45 (b) of this Part except as otherwise provided therein.”

. “[T]he purposes of the irrebuttable presumption may be satisfied in different ways depending on the nature of the law firm and the character of its practice. In smaller, more informal settings the imputation of knowledge as a matter of law is necessary to protect the client and avoid the appearance of impropriety. In other circumstances the risk of conflict is so minimal that the danger of it occurring is outweighed by policy considerations militating against an irrebuttable presumption.” (83 NY2d at 310-311.)