# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

1190

CA 14-00112

PRESENT: SCUDDER, P.J., SMITH, PERADOTTO, CARNI, AND SCONIERS, JJ.

---

IN THE MATTER OF THE ESTATE OF DAVID C. PETERS,
DECEASED.
------------------------------------------------
COREEN N. THOMPSON, ADMINISTRATRIX CTA,
PETITIONER-RESPONDENT,

                               MEMORANDUM AND ORDER

        V

JOAN PETERS, RESPONDENT-APPELLANT.

---

COLUCCI & GALLAHER, P.C., BUFFALO (PAUL G. JOYCE OF COUNSEL), FOR
RESPONDENT-APPELLANT.

LAW OFFICES OF JOHN P. BARTOLOMEI & ASSOCIATES, NIAGARA FALLS (JOHN P.
BARTOLOMEI OF COUNSEL), FOR PETITIONER-RESPONDENT.

---

     Appeal from an order of the Surrogate's Court, Genesee County
(Robert C. Noonan, S.), entered April 11, 2013.  The order denied
respondent's motion to disqualify petitioner's attorney and to stay
all proceedings pending substitution.

     It is hereby ORDERED that the order so appealed from is
unanimously affirmed without costs.

     Memorandum:  Respondent appeals from an order denying her motion
seeking, inter alia, to disqualify petitioner's attorney and his law
firm from representing petitioner.  We conclude that Surrogate's Court
properly denied that motion.

     In support of her motion, respondent contended that petitioner's
attorney had once represented her and her son, David C. Peters
(decedent), in an action related to ownership of one of the pieces of
real property at issue in this proceeding.  That real property is
situated within the borders of the Tonawanda Seneca Nation Territory
(Territory), and was purportedly owned by decedent when he died.
Through his will, which was offered for probate in September 2011,
decedent sought to devise and bequeath that same piece of real
property, as well as businesses situated thereon, to his brother and
petitioner, who is decedent's daughter.  Respondent is decedent's
mother, and she challenged various provisions of decedent's will,
contending that she had a superior right of ownership over all of the
real property situated on the Territory based on "matriarchal tribal
law."  Since decedent's death, there has been ongoing litigation
related to decedent's estate and the Surrogate's authority to preside

over that litigation (*see e.g. Peters v Noonan*, 871 F Supp 2d 218; *Matter of Tonawanda Seneca Nation v Noonan*, 122 AD3d 1334), and we take judicial notice of the records submitted to this Court in related appeals (*see Edgewater Constr. Co., Inc. v 81 & 3 of Watertown, Inc.* [appeal No. 2], 24 AD3d 1229, 1231).  In the midst of that litigation, respondent filed the instant motion to disqualify petitioner's attorney.

"The Code of Professional Responsibility does not in all circumstances bar attorneys from representing parties in litigation against former clients.  Rather, DR 5-108 sets out two prohibitions on attorney conduct relating to former clients.  First, an attorney may not represent 'another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client' . . . Second, an attorney may not use 'any confidences or secrets of the former client except as permitted by DR 4-101 (C) or when the confidence or secret has become generally known' " (*Jamaica Pub. Serv. Co. v AIU Ins. Co.*, 92 NY2d 631, 636).  "A party seeking disqualification of its adversary's lawyer pursuant to DR 5-108 (A) (1) must prove that there was an attorney-client relationship between the moving party and opposing counsel, that the matters involved in both representations are substantially related, and that the interests of the present client and former client are materially adverse.  Only 'where the movant satisfies all three inquiries does the irrebuttable presumption of disqualification arise' " (*id.*).

Of particular concern to the courts, however, is the fact that "motions to disqualify are frequently used as an offensive tactic, inflicting hardship on the current client and delay upon the courts by forcing disqualification even though the client's attorney is ignorant of any confidences of the prior client.  Such motions result in a loss of time and money, even if they are eventually denied.  [The Court of Appeals] and others have expressed concern that such disqualification motions may be used frivolously as a litigation tactic when there is no real concern that a confidence has been abused" (*Solow v Grace & Co.*, 83 NY2d 303, 310).  Inasmuch as the right to counsel of choice, while not absolute, "is a valued right[,] . . . any restrictions [thereon] must be carefully scrutinized" (*S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp.*, 69 NY2d 437, 443).  We must therefore balance "the vital interest in avoiding even the appearance of impropriety [with] a party's right to representation by counsel of choice and [the] danger that such motions can become tactical 'derailment' weapons for strategic advantage in litigation" (*Jamaica Pub. Serv. Co.*, 92 NY2d at 638).

Contrary to petitioner's contention, respondent established that she had a prior attorney-client relationship with petitioner's attorney, that the issues in the two litigations are substantially related, each involving ownership of the same parcel of property, and that her interests are adverse to those of petitioner (*see id.* at 636; *Tekni-Plex, Inc. v Meyner & Landis*, 89 NY2d 123, 132, *rearg denied* 89 NY2d 917; *Solow*, 83 NY2d at 313).  Usually, that would create an "irrebuttable presumption of disqualification" (*Tekni-Plex*, 89 NY2d at

132; *see Jamaica Pub. Serv.* Co., 92 NY2d at 636), but many courts have nevertheless denied disqualification upon finding that a party has waived any objection to the purported conflict of interest (*see e.g. Hele Asset, LLC v S.E.E. Realty Assoc.*, 106 AD3d 692, 693-694; *Gustafson v Dippert*, 68 AD3d 1678, 1679; *Lake v Kaleida Health*, 60 AD3d 1469, 1470).

In determining whether a party has waived any objection to a conflict of interest, "courts consider when the challenged interests became materially adverse to determine if the party could have moved [for disqualification] at an earlier time . . . If a party moving for disqualification was aware or should have been aware of the facts underlying an alleged conflict of interest for an extended period of time before bringing the motion, that party may be found to have waived any objection to the other party's representation . . . Further, where a motion to disqualify is made in the midst of litigation where the moving party knew of the alleged conflict of interest well before making the motion, it can be inferred that the motion was made merely to secure a tactical advantage" (*Hele Asset, LLC*, 106 AD3d at 694; *see Gustafson*, 68 AD3d at 1679; *Lake*, 60 AD3d at 1470).

Under the circumstances of this case, we conclude that respondent waived her objection to the attorney's representation of petitioner. Respondent "was aware . . . of the facts underlying [the] alleged conflict of interest for an extended period of time before bringing the motion" (*Hele Asset, LLC*, 106 AD3d at 694). Decedent passed away in August 2011, and the will was offered for probate in September 2011. The executors appointed by the will refused to transfer to petitioner any of the real or personal property located within the Territory that was devised and bequeathed to her because respondent was asserting a superior right to all of the real property located within the Territory as well as the businesses situated thereon under the claimed authority of tribal law. In December 2011, petitioner sought, inter alia, a hearing to determine whether respondent had lost any bequests pursuant to the in terrorem clause of decedent's will.

Respondent "made a 'special appearance' " in the probate proceeding on January 17, 2012 to assert her claims that the real property and businesses located within the Territory were not decedent's property to distribute. She claimed title and ownership of the property and the business interests "pursuant to matriarchal tribal law and clan interests." The Surrogate noted, however, that despite her assertions, respondent was refusing to submit to the jurisdiction of Surrogate's Court.

On January 30, 2012, respondent's attorney again appeared in court, at which time he was advised that respondent needed to file an intervenor pleading and pay a filing fee. Respondent refused to do so and, in March 2012, the Surrogate warned that the continued failure to do so would result in the Surrogate finding her in default on her attempted intervention. "Rather than intervene, on March 22, 2012, [respondent] filed a Federal lawsuit against [the Surrogate]." In the context of that federal action, respondent moved for a temporary

restraining order prohibiting the Surrogate from probating decedent's will.  That motion was denied on May 18, 2012 (*see Peters*, 871 F Supp 2d at 220).

In August 2012, the Surrogate removed the coexecutors based on their refusal to comply with orders issued by the Surrogate, and he appointed petitioner as administratrix C.T.A.  In December 2012, petitioner filed a petition seeking disgorgement and forfeiture of any and all bequests, devised properties and gifts under the will received by respondent.  One month later, in January 2013, respondent filed the instant motion to disqualify petitioner's attorney and his law firm from representing petitioner.

Petitioner's attorney has represented petitioner in this matter since November 2011.  At all times, petitioner's interests have been materially adverse to respondent's interests inasmuch as respondent has consistently maintained that, pursuant to matriarchal tribal law, she is entitled to all of the real property and businesses located within the Territory that were to pass to petitioner under the will.  Although respondent was technically not a named "party" in any proceeding, she and her attorney actively participated in the litigation for over one year with full knowledge of the identity of petitioner's attorney and the potential conflict of interest involving that attorney.  Given the complexity of the litigation, the hardship that would be inflicted on petitioner and the estate, and the one-year delay in bringing the motion, we conclude that this motion was made "as an offensive tactic" (*Solow*, 83 NY2d at 310), i.e., for the purpose of "secur[ing] a tactical advantage" in the proceeding (*Hele Asset, LLC*, 106 AD3d at 694), and that "there is no real concern that a confidence has been abused" (*Solow*, 83 NY2d at 310).

Entered:  January 2, 2015                        Frances E. Cafarell
                                                 Clerk of the Court