McGuire v The McGuire Group, Inc. (2025 NY Slip Op 02468)

McGuire v The McGuire Group, Inc.

2025 NY Slip Op 02468

Decided on April 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on April 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., CURRAN, GREENWOOD, AND HANNAH, JJ.

212 CA 24-00558

[*1]F. JAMES MCGUIRE, PLAINTIFF-RESPONDENT,
v
THE MCGUIRE GROUP, INC., DEFENDANT-APPELLANT. 

GOLDBERG SEGALLA, BUFFALO (MEGHAN M. BROWN OF COUNSEL), AND FRYMAN PC, VALLEY STREAM, FOR DEFENDANT-APPELLANT.
HARTER SECREST & EMERY LLP, BUFFALO (LAUREN R. MENDOLERA OF COUNSEL), FOR PLAINTIFF-RESPONDENT. 

 Appeal from an order of the Supreme Court, Erie County (Emilio Colaiacovo, J.), entered March 20, 2024. The order denied the motion of defendant to disqualify counsel for plaintiff. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Defendant, The McGuire Group, Inc. (TMG), appeals from an order that denied its motion to disqualify Harter Secrest & Emery LLP (HSE) from representing plaintiff, F. James McGuire, in this action alleging, inter alia, that TMG breached an employment agreement. We affirm.
TMG is a shared services company that, inter alia, provides administrative and consulting services to several skilled nursing facilities (facilities). The owner of TMG is an owner of the holding companies that, in turn, own the facilities. In short, TMG does not, itself, own the facilities, and in fact the agreement between the facilities and TMG specifies that the latter is an independent contractor. HSE represented the facilities in certain unrelated Medicaid litigation. At the time its representation of the facilities commenced, HSE had the facilities sign attorney engagement letters that contained, inter alia, clauses waiving potential future conflicts between HSE and the facilities.
At times relevant on appeal, plaintiff was chief executive officer of TMG pursuant to an employment agreement and was responsible for the general oversight and direction of the facilities. The employment agreement allowed plaintiff to terminate his own employment for "Good Reason," at which point TMG was required to pay plaintiff a certain amount of money over the course of several installments. Plaintiff alleged that, despite giving notice that he was terminating his employment for good reason, in accordance with the employment agreement, TMG failed to pay him some of the amounts to which he was entitled.
As a result, plaintiff commenced this action asserting causes of action for breach of contract and anticipatory repudiation. Several months later, after answering the complaint and interposing counterclaims, TMG moved to disqualify HSE from representing plaintiff in this action on the basis that there was a conflict of interest under Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.7 (a). Specifically, TMG alleged that there was a conflict of interest in allowing HSE to represent plaintiff against TMG inasmuch as HSE represented the facilities in active litigation, and that the facilities never waived any conflict. TMG contends on appeal that Supreme Court abused its discretion in denying the motion. We reject that contention inasmuch as we conclude that TMG failed to establish all of the elements necessary to disqualify HSE from representing plaintiff in this action.
" 'A motion to disqualify another party's attorney is addressed to the sound discretion of [*2]the trial court' " (Bison Plumbing City v Benderson, 281 AD2d 955, 955 [4th Dept 2001]; see Rose v Thrifty Rent-A-Car Sys., 305 AD2d 484, 485 [2d Dept 2003]). A party bringing a disqualification motion "ha[s] the burden of making a clear showing that disqualification is warranted" (Matter of Colello [appeal No. 3], 167 AD3d 1445, 1447 [4th Dept 2018] [internal quotation marks omitted]; see Lake v Kaleida Health, 60 AD3d 1469, 1470 [4th Dept 2009]). "A lawyer may not both appear for and oppose a client on substantially related matters when the client's interests are adverse" (Solow v Grace & Co., 83 NY2d 303, 306 [1994]; see Greene v Greene, 47 NY2d 447, 451 [1979]; Leonardo v Leonardo, 297 AD2d 416, 418 [3d Dept 2002]). More specifically, rule 1.7 precludes an attorney from engaging in concurrent representation where "the representation will involve the lawyer in representing differing interests," or "there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests" (Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.7 [a] [1], [2]; see Benevolent & Protective Order of Elks of United States of Am. v Creative Comfort Sys., Inc., 175 AD3d 887, 889 [4th Dept 2019]). Of course, establishing that there is a conflict of interest under the aforementioned circumstances presupposes that there is a current attorney-client relationship between the lawyer and the client seeking disqualification (see Benevolent & Protective Order of Elks of United States of Am., 175 AD3d at 889; see generally Tekni-Plex, Inc. v Meyner & Landis, 89 NY2d 123, 131 [1996], rearg denied 89 NY2d 917 [1996]; Matter of Carl B., Jr. [Carl B., Sr.], 181 AD3d 1161, 1161-1162 [4th Dept 2020], lv denied 35 NY3d 910 [2020]).
We also note the seriousness of a motion to disqualify a party's counsel of choice. "Disqualification of a law firm during litigation implicates not only the ethics of the profession but also the substantive rights of the litigants. Disqualification denies a party's right to representation by the attorney of its choice" (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 443 [1987]; see Matter of Abrams [John Anonymous], 62 NY2d 183, 196 [1984]; Consumers Beverages, Inc. v Kavcon Dev. LLC, 227 AD3d 1381, 1383 [4th Dept 2024]). In short, disqualification "is a severe remedy" and should be limited to "cases where counsel's conduct will probably taint the underlying trial" (Harris v Erie County Med. Ctr. Corp., 175 AD3d 1104, 1106 [4th Dept 2019] [internal quotation marks omitted]; see Consumers Beverages, Inc., 227 AD3d at 1383).
Here, we conclude that TMG did not satisfy the first part of the relevant disqualification test—i.e., an attorney-client relationship between TMG and HSE—and therefore TMG lacked standing to move to disqualify HSE. To establish standing, the movant must prove the existence of a current or prior attorney-client relationship between the moving party and opposing counsel (see Tekni-Plex, Inc., 89 NY2d at 131; Consumers Beverages, Inc., 227 AD3d at 1383-1384; Benevolent & Protective Order of Elks of United States of Am., 175 AD3d at 889). However, where, as here, "the firm sought to be disqualified had never represented the moving party, that firm owed no duty to that party," therefore precluding any standing to seek disqualification (Rowley v Waterfront Airways, 113 AD2d 926, 927 [2d Dept 1985]).
It is undisputed that neither TMG nor its owner was ever directly represented by HSE. Thus, TMG seeks to establish that it has standing on a theory that it is a corporate affiliate of the facilities that were directly represented by HSE—i.e., essentially on a theory that TMG is the alter ego of the facilities. We reject that contention. In support of its argument that the facilities were corporate affiliates of TMG such that they had standing to disqualify HSE, TMG relied primarily on the Second Circuit's decision in GSI Commerce Solutions, Inc. v BabyCenter, L.L.C. (618 F3d 204 [2d Cir 2010] [GSI]). In GSI, the Second Circuit affirmed the District Court's order granting a disqualification motion, concluding that it was not an abuse of discretion (see id. at 209-212). However, even assuming, arguendo, that the analytical framework of GSI applies here, a dispositive difference exists between GSI and this case, because there the court was evaluating whether there was a corporate affiliate conflict in the context of a wholly-owned subsidiary of the parent corporation (see id. at 206-209). Here, on the other hand, we conclude that TMG is not the alter ego of the facilities. In contrast to GSI, the record conclusively establishes that the facilities are not owned by TMG and are separate legal entities from TMG. Indeed, the services agreement that forms the basis of the relationship between TMG and the facilities expressly states that TMG would remain, at all relevant times, "an independent contractor," and that the facilities would, inter alia, "retain all managerial and supervising responsibilities, and authority with respect to the operation of the" facilities, and that "all services rendered pursuant to [the a]greement shall be [*3]provided subject to the ultimate direction and control of the" facilities. In short, unlike in GSI and the cases that it relies on, here there is simply no parent-subsidiary relationship to parse for purposes of disqualification.
TMG and the facilities structured their relationship in a particular way, with TMG seeking to set itself out as an independent contractor of the facilities. Courts "have expressed concern that . . . disqualification motions may be used frivolously as a litigation tactic when there is no real concern that a confidence has been abused" (Solow, 83 NY2d at 310). Here, we note indications that TMG was engaging in a litigation tactic by moving to disqualify HSE inasmuch as, inter alia, TMG waited months after the commencement of this action to call attention to the purported conflict, even though in the previous year, in a prior separate matter, there had been some discussions of a similar conflict.
Even assuming, arguendo, that TMG had standing to seek disqualification of HSE on an alter ego theory based on the attorney-client relationship that existed between HSE and the facilities, we also conclude that the court properly concluded that any conflict was waived in the engagement letters signed by the facilities when they retained HSE (see Gem Holdco, LLC v Ridgeline Energy Servs., Inc., 130 AD3d 506, 506 [1st Dept 2015]; Grovick Props., LLC v 83-10 Astoria Blvd., LLC, 120 AD3d 471, 472-474 [2d Dept 2014]). In the engagement letters signed by the facilities, the facilities expressly agreed, inter alia, to waive potential future conflicts that "may arise in the future between [the] facility and one of [HSE's] other health care clients," and that they "consent[ed] to [HSE's] continuing representation of both [the facility] and [HSE's] clients in the event of any such future conflict on unrelated matters." The waiver indicated that the facilities had "been informed of and [understood] the relevant implications, advantages and risks of providing such consent." TMG's contention that it, via the facilities, did not waive any such conflicts "is belied by the clear language of the [engagement letters]," and it "cannot now compel the disqualification of . . . [HSE] simply because the representation to which [the facilities] consented has since devolved into litigation" (Gem Holdco, LLC, 130 AD3d at 506 [internal quotation marks omitted]; see Grovick Props., LLC, 120 AD3d at 474).
Entered: April 25, 2025
Ann Dillon Flynn
Clerk of the Court