OPINION OF THE COURT
Leah Marks, J.
This adoption has been approved although many problems could have prevented approval. The case proves that when a prospective adoptive parent files a petition to adopt a child who has been in foster care, neither the agency responsible for *943 the child nor that agency’s lawyer should be permitted to take more than one role in the proceeding.
Although such actions have commonly been permitted by the judiciary, this case shows both the inappropriateness of permitting the agency to provide investigative services for the court and the inappropriateness of permitting the agency’s attorney to provide legal services for the person petitioning for adoption.
I. Permitting the Agency to Provide Investigations
This prospective adoptive child was born on September 14, 1988, and had been under the supervision of Edwin Gould Services for Children nearly four years at the time the adoption petition was filed. That agency provided the court with an investigation (called a home study) that it expected to be the only one used by the court.
The agency had supervised the prospective adoptive home, the child’s foster home. Moreover, the agency had been active in eliminating parental rights for the purpose of having the child adopted by the petitioner who was also the foster parent. Because the agency had been so fully involved, its report could not fulfill the Judge’s need for an "adequate basis for determining the propriety of approving the adoption.”[1]
If someone were investigating the judgment of this court, surely everyone would think it improper for the court to appoint the investigating party. Yet the agencies usually have done their own adoption investigations for the court, which has the duty to determine that the adoption will ensure "that the best interests of the adoptive child will be promoted”.[2]
Therefore, the court ordered the Probation Department to conduct an independent study of the prospective adoptive home.
The differences between the agency’s study and probation’s study were large. The following were among those factual differences that were not the result of the studies being done at different times:
The agency reported five people living in the home. The independent report found nine.
*944 The agency reported a "kitchen equipped with all essential appliances”. The independent report found a refrigerator in poor condition and an oven with its door propped shut with a piece of wood.
The agency reported a "well kept” and "neatly furnished” apartment where "house keeping standards are good”. The independent report found a bathroom leak causing fallen plaster, dim lighting because of faulty electrical outlets, roaches galore, and generally unsafe conditions.
The agency reported the "building complies with all applicable safety and sanitary requirements and is in good repair”. The independent report found that the entrance to the building itself was unsafe, lacking even a front door lock.
There were many more differences. The disparity between the reports may have been explained by the agency’s author, who referred to herself as working for the "agency sponsoring this adoption proceeding”.[3] Clearly this is not an independent source on which the court should rely for information.
II. Permitting the Agency Attorney to Represent the Petitioner
The attorney for the agency sponsoring the adoption was originally the attorney for the petitioner in this adoption.
While acting in both capacities, the attorney learned of the vast differences between the studies on the same day the court was informed.[4] Without any court action, the attorney promptly had his agency remove the prospective adoptive child and other children from the foster home of the petitioner, who was his client.
Of course, upon learning this the court appointed an independent attorney for the petitioner.[5] Clearly the agency attorney could not act both for the agency that originally con *945 sented to the adoption and for the prospective adoptive parent.
Such dual representation should not be permitted because a conflict could arise at any time. Every petitioner is entitled to permanently loyal representation from the beginning of the case.
There are ethical canons intended to ensure such representation. The ethical canons help to define the standards under which attorneys should act.[6]
"The professional judgment of a lawyer should be exercised * * * solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client.”[7]
Disciplinary rules related to such ethical canons usually deal with adversaries in court or codefendants. The uniqueness of an agency adoption case increases the importance of a personally loyal attorney.
The petitioner, the prospective adoptive parent in an agency adoption, must obtain much of the information from the agency. The petitioner may need facts or services available only from the agency, and may need services for the foster child that may have to be paid for by the agency.
The petitioner, both in court and out, needs a lawyer who will deal with the agency only for the benefit of the petitioner and the petitioner’s desire to complete the adoption. Of course, an unforeseeable event can always produce a conflict of interest. However, in adoption cases where an agency is involved, such a conflict can be foreseen.
Those involved in agency cases know that the agency is likely to change its plan for the foster child from time to time even while suing to free a child for adoption by a foster parent. The agency is not to be blamed for this. It is the agency’s job to try to define and act on the plan that is in the best interests of the child in the agency’s care.
The agency must be free to do that even after an adoption has been filed. The agency’s attorney must not represent the petitioning foster parent, who has the legal right to attempt to *946 carry the case through to the adoption, whatever the agency may wish.
It has been said by one agency attorney,[8] who represents agencies and petitioners in the same adoption cases, that the petitioner is protected by being assured that, although conflicts are possible, the agency attorney will end the relationship with the petitioner if a conflict does arise.
That is not enough. Although the attorney may feel covered, the petitioner is not.
Code of Professional Responsibility EC 5-15 points out that where there are "potentially differing interests” and a lawyer accepts such employment "he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially.”
"A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client. * * * Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure.”[9]
The advantage of and need for an independent attorney is made clear by this case. Upon appointment of the independent attorney for the prospective adoptive parent, that attorney immediately worked to negotiate the agency’s provision of services to the foster parent client that the agency should have been providing. Honest and honorable as the agency’s attorney may have been, he never noticed that his client, the petitioner, was being deprived by his other client, the agency, of assistance needed in order to ensure that the adoption could both take place legally and be a happy experience thereafter.
The independent attorney learned that four foster children living in the prospective adoptive home as kinship foster children should have been with their own mother, and encouraged the agency to return them to her. In that way, the petitioner was freed from an unnecessary burden, which freedom increased her ability to be approved as an adoptive parent.
The independent attorney along with the child’s Law *947 Guardian ensured that services were provided, both to the child and the home, that helped correct the physical problems noted in the independent report and enabled those remaining in the home to live healthier, more comfortable lives.
The independent attorney made clear to the court the petitioner’s inability to obtain necessary service from the agency. Such a petitioner, not used to fighting for her rights, could not be expected to understand concepts of conflict of interest and to voluntarily, intelligently waive the right to independent counsel.
It would have been better to have a person fully independent of the agency acting on the petitioner’s behalf from the beginning — better for the prospective adoptive parent, the child and the court.
However, the adoption has been approved by this court, and the home is a secure and happy one. For this, thanks should be given to the independent attorney and the assigned probation officer.
The legal adoption might have taken place without them. The emotionally satisfactory adoption might never have existed.
All lawyers are enjoined to promote public confidence in our judicial system and in the legal profession and to "avoid even the appearance of professional impropriety”.[10]
This applies to adoptions where most of the lawyer’s work may take place away from the courtroom as well as to more openly adversarial proceedings. The untutored petitioner should not be asked to make the decision. "Courts can never abdicate their responsibility to supervise and regulate the ethical conduct of attorneys appearing before them.”* [11]

. Section 112 (7) of the Domestic Relations Law, which permits the use of "an investigation by a disinterested person or by an authorized agency” and seems to indicate, by that wording, that the Legislature recognized the difference.

. Section 114 of the Domestic Relations Law.

. In another adoption case, the agency’s home study failed to report the foster mother was a priestess of the Santería religion which practices animal sacrifice. The Probation Department’s independent report stated those facts. Although constitutional, it is certainly an important fact to be disclosed.

. That confidential information was probably given to this agency attorney because of such attorney’s friendly and regular relations with court employees and agents.

. An attorney for the child was also appointed, but his role did not prove significant for the purposes of this opinion. However the kinds of problems illuminated by this case may lead to more appointments of lawyers for the child in adoption cases. Of course, the attorney for the child did encourage needed services for the child also.

. Part of the Code of Professional Responsibility which can be found in the Appendix to the Judiciary Law of the State of New York. Similar ethical standards are promulgated throughout the Nation by national, State, and local attorneys’ groups.

. Code of Professional Responsibility EC 5-1.

. Private letter to the court as part of a discussion of this problem with an agency’s attorney.

. Code of Professional Responsibility EC 4-5.

. Code of Professional Responsibility Canon 9; Code of Professional Responsibility EC 9-1, 6; Flushing Sav. Bank v FSB Props., 105 AD2d 829, 831; Greene v Greene, 47 NY2d 447, 451; Cardinale v Golinello, 43 NY2d 288, 296; Matter of Hof, 102 AD2d 591, 596.

. Chang v Chang, 190 AD2d 311, 318 (1993).