[776 NYS2d 15]

In the Matter of the Adoption of GUSTAVO G., an Infant. PATRICIA C., Appellant.

First Department, April 22, 2004

## APPEARANCES OF COUNSEL

*Warren & Warren, P.C. (Richard Warren* of counsel), for appellant.

## OPINION OF THE COURT

SULLIVAN, J.

In this proceeding to adopt the child Gustavo, whose biological mother's parental rights have been terminated, thereby freeing him for adoption, petitioner, the maternal grandmother, appeals from Family Court's dismissal of the petition based upon the court's disqualification of her counsel. Since the court improperly applied an unjustified per se disqualification rule, and the record clearly shows that the proposed adoption is in the child's best interests, we reverse and remand the matter to Family Court with the direction to complete the adoption process.

Gustavo, born on August 22, 1999, was originally placed with the Administration for Children's Services on March 3, 2000 and subsequently transferred to the care of Angel Guardian Children and Family Services (Angel Guardian). He has, since March 13, 2000, resided continuously in the kinship foster home of petitioner. By order entered on or about June 11, 2002, the biological mother and alleged father's parental rights were terminated and the child freed for adoption. Warren & Warren, P.C. represented Angel Guardian in that proceeding. Thereafter, on November 6, 2002, petitioner, represented by Warren & Warren, filed a petition seeking to adopt Gustavo.

As the record shows, petitioner complied with all the provisions of the Domestic Relations Law and submitted the requisite documentation, including a home study prepared by the caseworker. Petitioner, a detective with the New York City Police Department, is described as a friendly, outgoing and articulate woman, patient and attentive to the child, who is, according to the study, a lovable, playful and active toddler. The child is enrolled in a daycare center across the street from the precinct where petitioner works. Angel Guardian "highly recommends [petitioner] as the adoptive parent for Gustavo . . . so that he will receive the ongoing opportunity to thrive in his grandmoth-

er's love and devotion, and know safety and permanency throughout his lifetime and within his family of origin."

On January 27, 2003, Family Court, sua sponte, issued an order to show cause why the petition for adoption should not be dismissed because of Warren & Warren's conflict of interest. The latter responded by arguing that the application of a per se disqualification rule conflicts with New York public policy and by demonstrating that petitioner, before retaining Warren & Warren, was fully advised about dual representation and informed as to the possibility of a situation arising that would result in a disqualifying conflict of interest. The firm advised the court that in over 25 years of practice, and with considerable experience in the area of foster care and adoption law, its ability to recognize potential conflicts of interest and to protect the interests of its clients had never been questioned.

Without any reference to the child's best interests or any consideration of petitioner's ability to provide him with a stable and permanent home, Family Court, unable to find an actual conflict of interest and relying mainly on a New York State Bar Association ethics opinion (NY St Bar Assn Comm on Prof Ethics Op 708 [1998]), dismissed the petition.

Code of Professional Responsibility DR 5-105 (22 NYCRR 1200.24) provides:

> "(a) A lawyer shall decline proffered employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interests . . . .
>
> "(b) A lawyer shall not continue multiple employment if the exercise of independent professional judgment in behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests . . . .
>
> "(c) . . . [A] lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implications of the simultaneous representation and the advantages and risks involved."

As the facts show, petitioner's attorneys strictly complied with this provision. Although this is not a case of multiple employment, at the time petitioner retained Warren & Warren, the firm could and did exercise "independent professional judgment" on her behalf since her interests and those of Angel Guardian were aligned: both support petitioner's adoption of the child. At that juncture, insofar as the termination proceeding was concerned, Angel Guardian was a former client and, as even Family Court conceded, there was no actual conflict between the position of petitioner and that of Angel Guardian.

Moreover, as the record shows, at the time of retention, Warren & Warren clearly advised petitioner that it had represented Angel Guardian and of the possibility that a conflict of interest could arise at some point during the course of the adoption proceedings. In such an event, she was advised, Warren & Warren would withdraw as her attorney. After being so advised, petitioner decided to retain Warren & Warren. Absent some indication that the decision was not knowingly or intelligently made and given the lack of an actual conflict of interest, petitioner's choice of counsel must be respected. Since Warren & Warren complied with the applicable provisions of the Code of Professional Responsibility, there was no reason for the disqualification.

Family Court, without reference to any particular fact or analysis of the overall case, ruled that disqualification was mandated whenever an adoptive parent is represented by the same attorney who represented the foster care agency charged with the care and custody of the child. Such per se disqualification conflicts with legal precedent. As the Court of Appeals has noted, "A per se disqualification rule . . . conflicts with public policies favoring client choice and restricts an attorney's ability to practice" (*Solow v W.R. Grace & Co.*, 83 NY2d 303, 310 [1994]). Thus, in the case of successive representation, as here, "[a] party seeking to disqualify an attorney or a law firm, must establish (1) the existence of a prior attorney-client relationship and (2) that the former and current representations are both adverse and substantially related" (*id.* at 308).

Moreover, unlike the present case, in which successive rather than simultaneous representation is involved, "[a]n attorney may engage in simultaneous representation of different clients where such representation 'will not adversely affect . . . (his or her) independent professional judgment in behalf of (his or her) client (or clients)' . . . . Even where clients have differing

interests, an attorney may represent such clients where 'a disinterested lawyer would believe that the lawyer can competently represent the interest of each and . . . each consents to the representation after full disclosure of the implications of [the] simultaneous representation and the advantages and risks involved' " (*Rosen v Rosen*, NYLJ, Jan. 31, 2003, at 25, cols 2, 4 [Sup Ct, Suffolk County], quoting 22 NYCRR 1200.24 [c]).

In *Matter of Harley v Ziems* (98 AD2d 720 [1983]), in reversing the trial court's grant of a motion to disqualify counsel from representing a party where there was a pending parallel action raising the same issue against another party similarly represented, the Appellate Division found that "the interests of the represented parties are essentially similar and so any potential conflict of interest in their representation is at best minimal" (*id.* at 721), and held that "the interests of a client in retaining an attorney of his own choice and preference should prevail as against the general rule that the appearance of impropriety should be avoided" (*id.*).

Here, while there is a prior attorney-client relationship between Warren & Warren and Angel Guardian and an ongoing attorney-client relationship between Warren & Warren and petitioner, and the former and current representations are substantially related, they are in no way adverse. Insofar as Angel Guardian clearly supports the adoption by executing and filing with the court its written consent and strongly recommending in the home study that the adoption process proceed to completion, the parties are united in interest and are not in conflict. Nothing in this record suggests that Warren & Warren's successive representation of two of the parties is in any way "fraught with the potential for irreconcilable conflict" (*see Greene v Greene*, 47 NY2d 447, 451 [1979]). To the contrary, given their unity of interest, petitioner and Angel Guardian's use of the same attorneys facilitates a coordinated approach to the disposition of this matter and furthers the public interest in securing a permanent home for the child in a most expeditious manner. In concluding that Warren & Warren's "successive and dual representation presents an inherent conflict of interest relating to the very subject matter of the proceeding," the dissent ignores the unity of interest between Angel Guardian and petitioner and the fact that the mischief attendant upon successive representation arises from the adversarial relationship between the represented parties.

In justifying its decision, Family Court held, "In summary, the integrity of the system is at the heart of the matter, which

is more important than expediency. To preserve that integrity, even the appearance of conflict must be avoided." Clearly, Family Court adopted a per se rule of disqualification. In its view, the existence of any potential for conflict is sufficient to warrant disqualification. In support of its ruling, Family Court relied, as noted, upon an opinion issued by the New York State Bar Association (*supra*), which, needless to say, is advisory in nature and neither law nor binding precedent, and cited favorably *Matter of Vincent* (158 Misc 2d 942 [1993]), a Family Court case involving an actual conflict of interest between the petitioning adoptive parent and the placing agency.

In explaining its conclusion proscribing dual representation in foster care cases, the Committee on Professional Ethics wrote that in *Matter of Vincent* (*supra*),

> "[t]he court identified a number of ways in which a conflict between the interests of the foster care agency and the adoptive parents might manifest itself. In some cases, it may initially appear to be in the child's best interests for the natural parents' rights to be terminated and for the foster parents to adopt the child, but it may later appear to be otherwise. In light of new information or changed circumstances, a lawyer representing exclusively the agency might be expected to counsel the agency to change its plans, to advocate for the agency on behalf of a different outcome, or to present information to the court about problems relating to the adoptive parents that cast doubt on the appropriateness of their adopting the child. The lawyer who simultaneously represented the adoptive parents could not do any of these things, however, without acting disloyally to the individual clients. In other cases, a lawyer representing exclusively the adoptive parents might advocate for an increased level of services from the foster care agency or might call attention to the agency's deficiencies, whereas the lawyer who represented both clients might be discouraged from doing so out of loyalty to the agency."

As already noted, the court in *Vincent* addressed an actual conflict of interest that arose in an adoption proceeding. As is the case here, the adoptive parent was represented by the same attorney who represented the placing foster care agency. After

receiving a home study submitted by the agency, the court ordered the Probation Department to conduct a second investigation of the petitioning adoptive parent, which investigation, as it developed, contradicted many of the facts contained in the agency's home study. Upon learning of the "vast differences" between the two home studies and "[w]ithout any court action, the attorney promptly had his agency remove the prospective adoptive child and other children from the foster home of the petitioner, who was his client. Of course, upon learning this the court appointed an independent attorney for the petitioner. Clearly, the agency attorney could not act both for the agency that originally consented to the adoption and for the prospective adoptive parent" (158 Misc 2d at 944-945). Based upon this instance of an actual conflict, the court, in dicta, set forth a per se disqualification rule, impliedly setting a standard that measures the conduct of all adoption attorneys on the basis of a single set of circumstances. Unlike *Vincent*, there is no suggestion of any inappropriate conduct here and no indication of any information being withheld from the court, as Family Court conceded.

It is also significant to note the amendment of Social Services Law § 374 (6), which in providing, in pertinent part, that "[n]o attorney or law firm shall serve as the attorney for, or provide any legal services to both the natural parents and adoptive parents" with respect to adoptions from authorized agencies, sets forth the type of unacceptable dual representation in adoption proceedings. The Legislature's decision not to enact a statute prohibiting the representation of an adoptive parent by the attorney who represented the placing agency is significant. Had the Legislature found that such representation would involve the lawyer in representing differing interests or that it would otherwise be inconsistent with ethical principles, it would doubtless have taken action.

Based on the record presented, where the interests of petitioner and Angel Guardian are identical, Family Court was obliged to respect petitioner's choice of attorney (*see Solow v W. R. Grace & Co., supra*; *Kassis v Teacher's Ins. & Annuity Assn.*, 93 NY2d 611, 616-617 [1999]).

Since petitioner's initial burden in an adoption proceeding to establish that the child is freed and available for adoption has been met and the documentation submitted to the court undeniably establishes that adoption furthers the child's best interests, there is no need to remand for a best interests determination.

On this record, it can be safely concluded that "[i]f the goal is indeed to encourage a familial permanency through adoption, it is difficult to imagine a more suitable . . . parent[ ] than petitioner[ ]" (*Matter of Emilio R.*, 293 AD2d 27, 30 [2002]).

Finally, while the dissent concedes that Angel Guardian is a private agency and that "Warren & Warren is not a public employee," it nevertheless maintains that Code of Professional Responsibility DR 9-101 (b) (1) (22 NYCRR 1200.45 [b] [1]), which prohibits a lawyer from representing a private client in connection with a matter in which the lawyer participated personally as a public officer or employee, applies to this case. DR 9-101 (b) (1) has no application to this matter. Disciplinary action cannot be predicated on conduct which may be analogous to proscribed conduct; the conduct either falls within the rule's proscription or it does not. If the attorney has not engaged in the precise conduct proscribed, the rule is not violated.

In any event, there is no basis for an analogy between Angel Guardian and a public agency or between Warren & Warren and a public employee. Clearly, unlike a public agency or officer, Angel Guardian is not exercising any governmental power (*cf., Handelman v Weiss*, 368 F Supp 258 [1973] [attorney represented Securities Investor Protection Corporation, a nonprofit corporation created by Congress, whose board of directors is appointed by the federal government]; *Flego v Philips, Appel & Walden, Inc.*, 514 F Supp 1178 [1981] [attorney employed by the American Stock Exchange, which is "a compliance arm of the Securities and Exchange Commission" (at 1181) and exercises governmental power (*id.*)]). On the contrary, Angel Guardian, statutorily charged with the care of children, is subject to governmental power. Pursuant to Social Services Law § 371 (10) (a), Angel Guardian is "empowered . . . to care for, to place out or to board out children, . . . and . . . is approved, visited, inspected and supervised by the [Department of Social Services]."*

Since Warren & Warren is a private law firm representing a private agency, its disqualification does not serve DR 9-101 (b) (1)'s underlying purpose of ensuring public confidence in the integrity of public agencies and public processes by preventing

---

* In any event, we note that since Angel Guardian is sponsored by the Sisters of Mercy of the Americas, Brooklyn Regional Community, and affiliated with Catholic Charities of Brooklyn and Queens (<http://angelguardian.org>), it cannot, consistent with First Amendment principles, be deemed the functional equivalent of a public agency.

lawyers from using public office for private gain (NY St Bar Assn Comm on Prof Ethics Op 708 [1998]; *see Hilo Metals Co. v Learner Co.*, 258 F Supp 23, 28-29 [1966]).

Accordingly, the order of the Family Court, Bronx County (Sidney Gribetz, J.), entered on or about April 3, 2003, dismissing the adoption petition without prejudice, should be reversed, on the law, without costs or disbursements, the petition reinstated and the matter remanded to Family Court with the direction to calendar the matter promptly for the completion of the adoption.

MARLOW, J. (concurring). I agree with Justice Sullivan that the order dismissing the petition should be reversed, because the law as it currently stands requires that outcome, particularly, and most persuasively in my view, in light of the construction offered of Social Services Law § 374 (6). I also agree that, on this record, this child's best interests will be served by concluding this adoption as this Court directs.

Notwithstanding my vote to uphold this adoption, however, I consider it important to comment on the current state of the law and the Code of Professional Responsibility as they relate to the issues this appeal presents. I believe the Family Court Judge correctly viewed with skepticism an adoption where, as here, the same law firm: (1) had represented the agency in its successful Social Services Law § 384-b proceeding to terminate the parental rights of the biological mother to this child; (2) subsequently represented the foster parent in her separate proceeding to adopt the child; and (3) on an ongoing basis has been and is—both before and after those two proceedings— privately, separately and contemporaneously retained in unrelated termination cases to represent the very same agency.

I agree with Justice Sullivan's analysis of the facts of this case, i.e., that these facts satisfactorily demonstrate the absence of an actual conflict of interest arising from this law firm's dual representation of the agency and foster mother after full disclosure and consent in this particular instance. Further, while I agree that Justice Sullivan interprets Social Services Law § 374 (6) correctly, I respectfully disagree with the state of the law as it presently stands.

Consequently, where, as here, the same law firm represents both the agency in the termination proceeding and thereafter the prospective adoptive parent, with disclosure and consent in the adoption proceeding, I believe it would be completely appropriate, prudent and consistent with the fundamental aims of

the Family Court Act (*see* Family Ct Act § 241) to appoint a law guardian to represent the child under such circumstances. Otherwise, in my judgment, one of the Family Court Act's fundamental goals—to ensure that a child's best interests are always paramount and will remain protected—will unnecessarily be placed at risk.

The authority to appoint a law guardian "on its own motion" is clear when, "in the opinion of the family court judge, such representation will serve the purposes of this act" (Family Ct Act § 249 [a]). Moreover, the Legislature has emphasized the importance "to the extent practicable and appropriate, [of] appoint[ing] the same law guardian who has previously represented the child" (Family Ct Act § 249 [b]). That policy statement is especially relevant and compelling for this type of situation where a law guardian familiar with a family's history would likely be in a position, often superior to that of, and sooner than, the judge, to perceive the emergence of a conflict of interest that might have the potential to compromise the child's best interests. This is so because the law guardian would be the only nonjudicial person in this type of situation whose legal and ethical obligation is to act in the best interests of the child to the complete exclusion of the interests of all others. Thus, where one lawyer represents the adoptive parent after having earlier represented the agency in the related termination proceeding, a law guardian who earlier represented the child's interest in the termination proceeding will be the only advocate who knows the facts, the family history and the parties, and who, throughout all the proceedings, will have had a single-minded loyalty to the child and the child alone.

One could hardly dispute, and I fully appreciate and harbor no doubt, that in the *overwhelming* majority of cases the agency and the foster/adoptive parent(s) are highly motivated and have the adoptive child's best interests at heart. However, no system run by and for human beings can ever be blessed with perfection in every instance. History surely knows cases where mistakes have been made and children's best interests have been secondary or, even worse, irrelevant to an adult's agenda. Therefore, when this type of dual representation of counsel is permitted—even with disclosure and consent—a child's best hope of being fully protected, and, indeed, of appearing to be fully protected, lies with representation by an independent and trained law guardian. Indeed, as is set forth in New York State Bar Association Committee on Professional Ethics Opinion 708 (1998):

"The need to preserve public confidence in the integrity of the foster care and adoption processes makes it important that the foster care agency and its representatives remain free of influences that might compromise their ability to act in the child's best interests. The interests of the adoptive parents, in contrast, are private ones: typically, their goal is to adopt the child. These differing interests of the agency and individuals will often lead them to pursue the same objective, but this will not invariably be true."

Thus, it appears that a substantial segment of the organized bar believes that dual representation in similar situations is inappropriate and unwise (*see* NY St Bar Assn Comm on Prof Ethics Op 708 [1998], relying on Code of Professional Responsibility DR 5-101 [a] [22 NYCRR 1200.20 (a)]; DR 5-105 [a] [22 NYCRR 1200.24 (a)]; DR 5-108 [a] [22 NYCRR 1200.27 (a)]; DR 9-101 [b] [1] [22 NYCRR 1200.45 (b) (1)]). I also note that in addition to the bar's lack of confidence in this practice, at least two judges of the Family Court are similarly unsettled by the potential for a conflict of interest wrought by such dual representation (*see Matter of A.*, 189 Misc 2d 500 [2001]; *Matter of Vincent*, 158 Misc 2d 942 [1993], relying on Code of Professional Responsibility Canon 9).

Indeed, the express purpose of Canon 9, which directs all lawyers to avoid even the appearance of impropriety, is to promote public confidence in our system of justice and in the various agencies created to serve that system (*see* NY St Bar Assn Comm on Prof Ethics Op 708 [1998]). In order to accomplish this purpose, a lawyer may not represent a succeeding client in substantially related matters, regardless of whether consent is given. Accordingly, "in some instances, because the relationships or interests create a substantial *likelihood* of profound conflict . . . , representation is not permitted under any circumstances" (*Matter of Kelly*, 23 NY2d 368, 378 [1968] [emphasis added]). This is especially true where the public interest is involved (*id.* n 3). Thus, an attorney must not advance or appear to advance conflicting interests, "[p]articularly . . . whe[re] the public interest is implicated," and where "the conflict extends to the very subject matter of the litigation" (*Greene v Greene*, 47 NY2d 447, 452 [1979]).

Indeed, since a child's best interests are and should always remain the paramount concern, I see the need for separate rep-

resentation as even more compelling when the adoptive parents are represented by an attorney who had and has an ongoing lawyer-client relationship with the subject agency in this and other matters. Although in the great majority of adoptions a law guardian is unnecessary and therefore appropriately not appointed, that is not always the case, for example, where, as here, the child's best interests are particularly vulnerable because he has no advocate with undivided loyalty to him in the event a potential conflict appears or an actual conflict arises between the agency and the adoptive parent, both of whom are represented by the same attorney. Thus, and even though I recognize that an actual conflict may arise in very few cases, I suggest that, at the very least, whenever dual representation is allowed, a law guardian should be appointed.

Furthermore, here, the foster care agency serves as the functional equivalent of a public agency within the meaning of Social Services Law § 371 (10). An attorney representing an agency in the exercise of its duties on behalf of the public may be considered the functional equivalent of a public employee, and, therefore, should avoid the representation of private clients in the same matters in which that attorney had substantial and different responsibilities (*see e.g.* NY St Bar Assn Comm on Prof Ethics Op 708 [1998] [lawyer representing foster care agency in surrender proceedings or termination of parental rights proceedings may not concurrently or subsequently represent prospective adoptive parents of subject child]; NY St Bar Assn Comm on Prof Ethics Op 543 [1981] [Legal Aid attorney is public employee, thus prohibited from representing clients previously represented by lawyer in capacity as Legal Aid attorney]; NY St Bar Assn Comm on Prof Ethics Op 514 [1979] [court-appointed guardian ad litem for conservatee may not subsequently accept employment with conservator]; *Handelman v Weiss*, 368 F Supp 258 [1973] [assistant to attorney appointed by Securities Investor Protection Corporation is a representative of the government's interests]; *Flego v Philips, Appel & Walden, Inc.*, 514 F Supp 1178 [1981] [compliance attorney for American Stock Exchange is a "public employee"]).

Even though an attorney may be protecting the present client's interest, "there is a danger that the lawyer who accepts employment by the prospective adoptive parents shortly after representing the foster care agency will be perceived by the public to have acted for private advantage" (NY St Bar Assn

Comm on Prof Ethics Op 708 [1998]),* thus undermining public confidence in the system. Therefore, regardless of the existence of a waiver or the absence of an actual conflict, I nonetheless believe that the best way to ensure continued public confidence in the integrity of agencies created to serve our judicial system, and to serve the children whose interests that system is designed to protect, is, by statutory amendment, to prohibit categorically such dual representation in these proceedings.

Currently, as Justice Sullivan points out, Social Services Law § 374 (6) provides only that "No attorney or law firm shall serve as the attorney for, or provide any legal services to both the natural parents and adoptive parents." It is silent on the issue of the propriety of dual representation of an adoption agency and an adoptive parent, an omission which, in my view, the Legislature, not the courts, should correct.

Therefore, for the foregoing reasons, I urge the Legislature to revisit this issue and amend section 374 (6) of the Social Services Law accordingly.

TOM, J. (dissenting). I disagree with the majority and believe that the order of the Family Court, dismissing the petition without prejudice to the filing of a new petition by a different attorney, should be affirmed.

The child, Gustavo, was placed with the Administration for Children's Services as a result of the mother's drug abuse, and subsequently transferred to the care of Angel Guardian Children and Family Services. On or about June 11, 2002, an order was entered terminating the parental rights of the natural parents and freeing the child for adoption. The firm of Warren & Warren, P.C. represented the foster care agency in the termination proceeding.

On November 6, 2002, a petition was filed by the maternal grandmother, seeking to adopt Gustavo. Warren & Warren also represents this prospective adoptive parent in this subsidized adoption proceeding. Simultaneously to this representation of petitioner herein, Warren & Warren continues to represent the foster care agency in other unrelated termination of parental rights proceedings. The foster care agency itself also remains an

---

* For example, if information about the child, the biological or the adoptive parents, or the foster care agency were to come to light that might delay the proceedings or jeopardize the adoption, the perception might be that the attorney may be acting in the interest of the foster care agency at the expense of his or her client or to help the agency with which he or she still maintains a lawyer-client relationship.

integral participant in this adoption proceeding. It has submitted an investigative report and recommendation and executed a stipulation consenting to an order of reference, which are subject to the court's approval, and is eligible to receive an adoption fee from the Commissioner of Social Services.

In the present context, where the public trust is implicated and counsel must be free of influences that might compromise its ability to act in the best interests of the child, this successive and dual representation presents an inherent conflict of interest relating to the very subject matter of the proceeding, undermines public confidence in our court system, and creates an untenable appearance of professional impropriety (*see generally Greene v Greene*, 47 NY2d 447, 452 [1979]).

Where there is successive and simultaneous representation as in the present case, there is always a risk that the public interests of the foster care agency and the private interests of the adoptive parent will conflict in a manner that will impair counsel's exercise of independent professional judgment on behalf of one or both clients. Even where the interests appear to coincide, as urged by the majority, there is always a possibility that circumstances may change. For example, information may come to light that requires the foster care agency to advocate a different outcome or to present information to the court that is adverse to the adoptive parent. In other cases, conflicts may arise as to the adequacy or inadequacy of services provided by the foster care agency. A lawyer who represents both the foster care agency and the adoptive parent cannot pursue these issues without being disloyal to one or the other of the clients.

Further, the need to preserve public confidence in the integrity of the foster care and adoption processes mandates that the foster care agency and its representatives remain free of influences that might compromise their ability to act in the child's best interests (*see Matter of A.*, 189 Misc 2d 500 [Fam Ct, Queens County 2001]; *Matter of Vincent*, 158 Misc 2d 942 [Fam Ct, NY County 1993]; *see also* NY St Bar Assn Comm on Prof Ethics Op 708 [1998] [Ethics Op 708]; Code of Professional Responsibility DR 9-101 [b] [1] [22 NYCRR 1200.45 (b) (1)]; DR 5-105 [b] [22 NYCRR 1200.24 (b)] [all finding that it is improper for the law firm that represented the agency in the termination proceeding to represent the prospective adoptive parent in the subsequent adoption proceeding]). In Ethics Opinion 708, the Committee on Professional Ethics, citing *Matter of Vincent (supra)*, advised:

"The court's analysis led to the conclusion, with which we agree, that a lawyer may not simultaneously represent the foster care agency and the adoptive parents. This is true even if the agency and individual clients offer to consent to the representation after being fully apprised of the risks. The dual representation is impermissible because it 'would be likely to involve the lawyer in representing differing interests,' DR 5-105 (A), and it would not be 'obvious that the lawyer can adequately represent the interest of each [client].' DR 5-105 (C). Further, as the court noted, '[a]ll lawyers are enjoined to promote public confidence in our judicial system and in the legal profession and to "avoid even the appearance of professional impropriety." ' "

The majority asserts that *Matter of Vincent* (*supra*), on which *Matter of A.* (*supra*) relies, is distinguishable because *Matter of Vincent* addressed an actual conflict of interest. This misses the point.

In *Matter of Vincent* (*supra*), the agency prepared a "home study" of the prospective adoptive home. Because the agency was so fully involved, the court found that its report could not fulfill its need for an adequate basis for determining the propriety of approving the adoption. The court then ordered the Probation Department to conduct an independent study of the prospective adoptive home which differed in many ways from the agency's report. It was thus clear that the agency was not "disinterested" as required by Domestic Relations Law § 112 (7) and that the foster parent's interests were not adequately represented by the foster parent's attorney who also represented the adoption agency. While an actual conflict existed, the rationale for disapproving the dual representation was broader. The Family Court explained that "[s]uch dual representation should not be permitted because a conflict could arise at any time. Every petitioner is entitled to permanently loyal representation from the beginning of the case" (*Matter of Vincent*, 158 Misc 2d at 945). Thus, the salient factor was that a conflict may arise at any time, not that one actually existed.

This is true even where the parties consent to the dual representation and the adoptive parent's purported consent does not require a different determination. The adoptive parent may not have the sophistication to navigate the child welfare bureaucracy or appreciate the intricacies of court practice or the pos-

sibility that conflicts may arise even among parties who share the same objective. Thus, the Family Court must act to ensure that independent legal representation is provided so that the best interests of the child are served. Moreover, regardless of the consent of the proposed adoptive parent, the best interests of the child are paramount.

In this context, the majority overlooks the applicability of DR 9-101 (b) (1) (22 NYCRR 1200.45 [b] [1]) to this matter. DR 9-101 provides in relevant part:

"(b) Except as law may otherwise expressly permit:

"(1) A lawyer shall not represent a private client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, and no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in such a matter unless:

"(i) The disqualified lawyer is effectively screened from any participation, direct or indirect, including discussion, in the matter and is apportioned no part of the fee therefrom; and

"(ii) there are no other circumstances in the particular representation that create an appearance of impropriety."

In Ethics Opinion 708, the Ethics Committee analyzed the distinction between ethical rules relating to the protection of client confidences and those intended to ensure public confidence in the judicial process:

"Under DR 5-108 (A), a lawyer is generally forbidden from representing a new client against a former client in a matter that is the same or substantially related to the prior representation. However, DR 5-108 (A) permits the successive representation 'with the consent of [the] former client after full disclosure.' The different approaches to client consent reflect the different purposes of these rules: DR 9-101 (B) is principally intended to ensure the public's confidence in the integrity of public agencies and public processes, whereas DR 5-108 (A) is principally intended to protect against the misuse of the former client's confidences. Generally speaking,

conflict-of-interest rules have been more restrictive in contexts, such as those addressed by DR 9-101 (B), that specifically implicate the public interest."

Thus, "in some instances, because the relationships or interests create a substantial likelihood of profound conflict, . . . representation is not permitted under any circumstances" (*Matter of Kelly*, 23 NY2d 368, 378 [1968]).

While it is true that the foster care agency is a private agency and that Warren & Warren is not a public employee, it acted substantially as a public officer. When the foster care agency took custody of Gustavo, brought judicial proceedings to free him for adoption, undertook statutorily assigned responsibilities as his legal guardian, and endeavored to facilitate his adoption, it was exercising the public trust and employing powers usually reserved for public bodies, acting as the functional equivalent of an "authorized" agency itself within the meaning of Social Services Law § 371 (10), bringing its counsel within the ambit of DR 9-101 (b) (*see Matter of A., supra*; Ethics Op 708, *supra*). As the Committee on Professional Ethics observed (quoting NY St Bar Assn Comm on Prof Ethics Op 534 [1981]):

"DR 9-101 (B) should be seen as providing an illustration of a general policy underlying much of Canon 9 [of the Code of Professional Responsibility]. It is a policy which may be seen to develop from the Code's expressed purpose to promote public confidence in our system of justice and the various mechanisms, or agencies, which have been created to serve that system. Where the public might reasonably perceive that such agencies are being used for the personal advantage of [its] attorneys, consistent with the broad purposes of Canon 9, the attorneys have been prohibited from undertaking various kinds of private employment."

Indeed, in determining who qualifies as a public employee, courts generally have relied more on policy considerations than on formalistic definitions (*see Handelman v Weiss*, 368 F Supp 258, 262-264 [1973] [former attorney for the Securities Investor Protection Corporation was a public employee for the purposes of DR 9-101 (b)]; *Flego v Philips, Appel & Walden, Inc.*, 514 F Supp 1178 [1981] [compliance attorney for American Stock Exchange is a "public employee"]). Thus, the Code imposes an equivalent restriction in cases in which the concerns underlying DR 9-101 (b) (1) are implicated and as the Committee on Professional Ethics found:

"under DR 9-101 (B) (1) and Canon 9 of the Code, it would also be impermissible for a lawyer to represent a foster care agency in termination of parental rights proceedings or extra-judicial surrender proceedings, to end the representation, and then to begin representing the prospective adoptive parents. Compare N.Y. State 514 (1979) (a lawyer who served as guardian ad litem in a conservatorship proceeding may not, a few days after the conclusion of the proceeding, accept employment as counsel for the conservator)."

Warren & Warren's simultaneous representation of the foster care agency in other termination of parental rights proceedings is equally troubling. It can support the perception that counsel, knowing that a large part of its business flows from the termination proceedings it brings on behalf of the foster care agency, may defer to the agency's judgment, rather than that of the adoptive parents or the best interests of the child. Similarly, the successive representation of the adoptive parent in the adoption proceeding can support the perception that counsel may have acted for private advantage in the termination proceeding, advocating for the termination of parental rights, regardless of whether it was in the child's best interests, in order to generate additional business in the subsequent adoption proceeding (*see Matter of A., supra*). To permit successive and dual representation under the circumstances creates the potential for such abuse and supports the public perception that foster care agencies are being used for the personal advantage of their attorneys. This will lead to the erosion of public confidence in our judicial system.

The fact that the attorney may end the relationship with the petitioner if a conflict of interest arises does not require otherwise. As the Family Court observed in *Matter of Vincent* (158 Misc 2d at 946), "[t]hat is not enough. Although the attorney may feel covered, the petitioner [client] is not." Again, the adoptive parent may not appreciate the intricacies of the judicial process relating to adoptions or that a conflict has arisen and should not be placed in a position where he or she must blindly rely on the attorney's determination as to whether a conflict is significant enough to warrant disqualification.

The majority also finds that the amendment of Social Services Law § 374 (6) sets forth the type of unacceptable dual representation in adoption proceedings and that if the Legislature

found that dual representation by an attorney of the foster care agency and prospective adoptive parent presented a conflict or was inconsistent with ethical principles, it would have taken action at that time by precluding such representation as well as the dual representation of the natural and adoptive parents. However, the proviso that "[n]o attorney or law firm shall serve as the attorney for, or provide any legal services to both the natural parents and adoptive parents" was approved and effective July 10, 1989 (*see* L 1989, ch 315, § 1). Thus, the language on which the majority relies for its preclusion argument was already in Social Services Law § 374 (6) when *Matter of Vincent (supra)* was decided and when Ethics Opinion 708 was issued. It was also in existence when *Matter of A. (supra)* was decided. Ergo, the Committee on Professional Ethics in issuing Ethics Opinion 708 and the *Vincent* and *A.* courts, in rendering their decisions, found that section 374 (6), with the above-quoted language already in place, did not preclude the prohibition of other types of dual representation concerning Family Court proceedings which can lead to a potential conflict of interest and undermine public confidence in our judicial system.

Furthermore, in passing the July 10, 1989 amendment to Social Services Law § 374 (6), the Legislature recognized that dual representation of both the natural mother and adoptive parent was "deemed by the sponsor to be contrary to the integrity of the adoption process and the best interests of the child to be adopted" (*see* 1989 NY Legis Ann, at 167). As detailed above, dual representation of both the foster care agency and the adoptive parent raises the same concerns and is violative of the very same ethical principles.

Citing *Solow v W.R. Grace & Co.* (83 NY2d 303, 310 [1994]), the majority also states that the Family Court improperly applied a per se disqualification rule. In *Solow*, the plaintiff was represented by Stroock & Stroock & Lavan (Stroock) to recover damages for asbestos contamination. Stroock had represented defendant in a prior asbestos contamination case. The Stroock attorney who had previously represented defendant had left the firm well before Stroock was retained by plaintiff. The Court of Appeals held that under these circumstances, the strict enforcement of the irrebuttable presumption of disqualification gave too much weight to the ethical obligation to avoid an appearance of impropriety and unduly impaired related policy objectives involving the right of litigants to select counsel of their choice and favoring the mobility of attorneys (*Solow v Grace*, 83 NY2d at 313).

In reaching this determination, the Court of Appeals found that the per se rule of disqualification was unnecessarily preclusive because it disqualified members of a law firm indiscriminately, whether or not they shared knowledge of a former client's confidences and secrets, leading to the frequent use of motions to disqualify as an offensive tactic (*Solow v Grace*, 83 NY2d at 310). These concerns are not implicated here, where the preservation of client confidences is not the focal point. The concern in this case is that the dual representation creates an inherent conflict of interest in that the attorney may be perceived or may actually be acting for his or her private advantage instead of advocating for the best interests of the child, leading to the erosion of public confidence in the integrity of our court system and the adoption process. The nuances of a Family Court proceeding where the best interests of the child are the primary concern dictate a different result in the instant case than the determination in *Solow*.

Thus, I would affirm in that the Family Court correctly held that the circumstances herein create an appearance of impropriety and a potential for conflict of interest requiring the law firm's disqualification regardless of the absence of actual conflict between petitioner and the foster care agency, and petitioner's purported awareness of the potential for conflict.

BUCKLEY, P.J., and MARLOW, J., concur with SULLIVAN, J.; MARLOW, J., also concurs in a separate opinion; TOM, J., dissents in a separate opinion.

Order, Family Court, Bronx County (Sidney Gribetz, J.), entered on or about April 3, 2003, reversed, on the law, without costs or disbursements, the adoption petition reinstated and the matter remanded to Family Court with the direction to calendar the matter promptly for the completion of the adoption.